MELS GOLDSBERRY v. STATE OF NEBRASKA.

FILED OCTOBER 18, 1912.   No. 17,639.

1. Criminal Law: IMPANELING GRAND JURY: OBJECTIONS: REVIEW. Objections to the impaneling of the grand jury may be presented by plea in abatement. If such a plea is made and there is no rul-

ing or refusal to rule thereon by the trial court the objection is waived. The objection cannot be taken by motion in arrest of judgment.

2. Indictment: REQUISITES: SIGNATURE. An indictment must be indorsed and the indorsement subscribed by the foreman of the grand jury. Signing of an indictment by the prosecuting attorney is unnecessary and immaterial.

3. Embezzlement: INDICTMENT: PRINCIPAL. An indictment under section 121 of the criminal code should show whether the principal whose agent is charged with embezzlement is a private person. If the principal is described as "Lillian Casey," a private person, when first named in the indictment, and afterwards designated as the "said Lillian Casey," the description is sufficient.

4. Criminal Law: APPOINTMENT OF ASSISTANT PROSECUTOR. An assistant for the county attorney in felony cases may be selected by him under the direction of the court. Such assistant cannot be selected by private persons interested in the prosecution. A member of the bar of another state may be selected by the county attorney if the court is satisfied that such selection is proper and so directs. Such assistant must be qualified as directed by section 3, ch. 7, Comp. St. 1911.

5. ———: ———: PRESUMPTIONS. It will not be presumed that the trial court has neglected its duty in directing the selection of assistant for the prosecuting attorney. Unless the record shows affirmatively that such assistant did not take the oath prescribed by statute, such omission will not be presumed. The recital in defendant's affidavit filed with motion for new trial that the oath was not taken will not be regarded by this court as establishing that fact. Whether an assistant who has been properly procured under the direction of the court will afterwards be disqualified by receiving additional compensation from private persons is not decided.

6. ———: MISCONDUCT OF PROSECUTOR: OBJECTIONS: REVIEW. Objection that the prosecuting attorney is guilty of misconduct at the trial prejudicial to defendant must be taken at the time. It is primarily a question for the trial court. It is too late to make the objection for the first time in the motion for a new trial.

7. Embezzlement: AGENCY: EVIDENCE. If an agent receives a draft from his principal with instructions to purchase certain property therewith, and the agent pursuant to that employment obtains the money on the draft and afterwards converts the money, the jury will be justified in finding that he obtained and had the money as agent of the person from whom he received the draft.

8. **Criminal Law:** INSTRUCTIONS: ADMISSIONS. It is without prejudice to the defendant if the court instructs the jury in a trial for felony that certain facts stand admitted, when the defendant himself and other witnesses have testified to the facts stated, and there is no evidence to the contrary.

9. ———: ———: VENUE. If the court submits the question as to the place of the commission of the alleged crime fully and fairly to the jury, it will not be held prejudicial error to tell the jury that they have nothing to do with the law question involved in determining the proper venue.

10. ———: ———: OBJECTIONS. If the defendant desires instruction upon matters not mentioned by the court in its instructions, he should request the same. An objection in this court that important matters were omitted from the instructions, without specifying what those matters were, will not ordinarily be considered.

11. **Embezzlement:** EVIDENCE. The evidence is found to be sufficient to support the conviction.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Burr, Greene & Greene,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

SEDGWICK, J.

The defendant, who is plaintiff in error here, was convicted in the district court for Lancaster county of the crime of embezzlement. He urges several grounds on which he thinks he is entitled to a reversal of the judgment.

1. The first objection is as to the impaneling of the grand jury which found the indictment. It is said that the jury which was impaneled for the first term of the year 1911 was selected from the old list prepared during the preceding year. It appears that a plea in abatement was filed upon this ground, but the record does not show that any action was taken by the court upon this plea. After

the verdict, a motion was filed in arrest of judgment upon
this ground, and it is now insisted that the court erred
in overruling this motion.   Section 493 of the criminal
code provides that a motion in arrest of judgment may be
granted by the court when the offense charged is not within
the jurisdiction of the court, and when the facts stated in
the indictment do not constitute an offense.   Section 444
provides that all defects which may be excepted to by a
plea in abatement shall be taken to be waived by pleading
in bar or the general issue.   The question here presented
is properly raised by plea in abatement, and, the court not
having ruled upon that plea, nor refused to make such
ruling, the objection now taken is waived.   *Dodge v. People*, 4 Neb. 220; *Leisenberg v. State*, 60 Neb. 628.

2. The next objection is that the indictment is not sub-
scribed by the foreman of the grand jury, but is subscribed
by the county attorney.   Section 408 of the criminal code
provides that, when indictment is found, the "foreman
shall indorse on such indictment the words, 'A true bill,'
and subscribe his name thereto as foreman."   This was
done in this case, and was all the signature necessary, and
the signature of the county attorney, it appears, neither
adds to nor detracts from the force of the indictment.

3. It is contended that the indictment "does not state
facts sufficient to constitute an offense under the laws of
the state of Nebraska."   The indictment is drawn under
section 121 of the criminal code.   Under that section the
agent of any private person or any copartnership or any
incorporated company or any joint stock company who
shall do certain things shall be guilty of embezzlement.   It
is contended that the indictment does not allege that this
defendant was the agent of any of these.   It alleges that
"the defendant (naming him),   *   *   *   then and there
being the agent of one Lillian Casey, a private person,
*   *   *   did   *   *   *   receive from said Lillian Casey a cer-
tain draft."   The indictment describes the principal for
whom the defendant was acting (as agent) as a private
person, and afterwards in every instance refers to her as

the "said Lillian Casey," and we think thereby it suffi-
ciently identifies her as a private person. This objection
to the indictment therefore is not well taken.

4. The next objection is that the court erred "in ap-
pointing an unsworn, nonresident attorney to aid in the
prosecution." The county attorney under the direction of
the court procured one Robinson to assist in the prosecu-
tion. Mr. Robinson was a resident of Kansas City, Mis-
souri, and appears to be a member of the bar of that state.
It is objected that the attorney so selected was not a mem-
ber of the bar of this state, and had never taken the oath
required of an attorney who practices in this state. In
*McKay v. State*, 90 Neb. 63, our statute authorizing the
county attorney to procure assistance in the trial of felony
cases is quoted and construed. The former decisions of
this court, both those rendered before the enactment of
the present statute and the later decisions, are reviewed,
and it is held that the county attorney may procure such
assistance under the direction of the court, but that pri-
vate individuals who are interested in the prosecution are
not allowed to select such assistant for the county attor-
ney. Section 3, ch. 7, Comp. St. 1911, provides: "Any
practicing attorney in the courts of record of another
state or territory, having professional business in either
the supreme or district courts, may, on motion, be ad-
mitted to practice (for the purpose of said business only)
in either of said courts, upon taking the oath aforesaid."
No doubt the statute authorizing the county attorney to
procure assistance in the trial of criminal cases contem-
plates that his assistant shall be a duly qualified attor-
ney, and the selection of such an assistant must be under
the direction of the trial court who will see that he is duly
authorized to appear as an attorney at law. If the at-
torney so selected is a member of the bar of this state, he
will realize the importance of the duties he is to perform
under the provisions of our statute, and under his oath
as a member of the bar will have continually in mind the
duties of that important office as prescribed in section 5

and other provisions of the said chapter. If not a member
of the bar of the state, he will qualify himself to practice
in the particular case for which he is selected under the
provisions of section 3 above quoted.

The abstract in this case shows that counsel for the de-
fendant in the motions and objections made in the trial
of the case recited that Mr. Robinson was a nonresident
and was unsworn, but these recitals do not establish the
fact, and the abstract does not show, that section 3 above
quoted was not complied with by the court. The presump-
tion is that the court performed its duty in that regard.
It is further insisted that Mr. Robinson had been re-
tained by private individuals to prosecute this case, and
that he had been by them paid at least in part for his
services. The abstract shows that Mr. Robinson re-
nounced any employment by private individuals, and re-
turned all fees that they had paid him for his services in
this case. Whether an attorney who had been procured
by the county attorney, under the direction of the court,
to assist in the prosecution, for compensation to be paid
by the county, would be disqualified by receiving addi-
tional compensation from private individuals was not
considered or determined in *McKay v. State, supra,* and
it is not necessary to determine that question in this case
for the reason above stated. It is the duty of the trial
court to see that proper selection is made in the interest
of the state, and for the promotion of justice in determin-
ing the guilt or innocence of the accused, and the pre-
sumption is that the trial court has properly exercised its
discretion in that regard.

5. It is objected that the evidence is not sufficient to
justify the conviction. The indictment charged that the
defendant, being the agent of one Lillian Casey, a pri-
vate person, "did by virtue of such employment as agent
* * * receive from said Lillian Casey a certain draft,
the property of said Lillian Casey" (setting it out in
full); that the draft was indorsed by the said Lillian
Casey, and that the defendant afterwards, "in the county

of Lancaster, Nebraska, then and there being, did indorse said draft and receive thereon from the First National Bank, of Lincoln, Nebraska, and take into his possession, the sum of $800 in good and lawful money of the United States of America, of the value of $800, the property of the said Lillian Casey, his principal, and did then and there fraudulently, unlawfully and feloniously convert to his own use and embezzle said money without the con- sent of the said Lillian Casey, his principal." The de- fendant was a witness in his own behalf, and from his tes- timony and that of the complaining witness, Lillian Casey, and others, it is shown without contradiction that the draft described was the property of Lillian 'Casey, and that the defendant received it from her and obtained the money on the draft in Lincoln, as charged in the indict- ment. The defendant testified that he was asked by Lillian Casey "to cash the draft because she could not be identified and did not care to be known to certain people." It is conceded that he afterwards received and cashed a draft of $1,000 for Miss Casey, and he testified that he retained $100 to make himself whole "for the expense of exchange, and money actually advanced" to Miss Casey, and that he paid her $1,700 at a certain time and place named by him, in the presence of several witnesses. He claims that under these circumstances, if he embezzled anything, it was the draft, and not the money as alleged in the indictment. This evidence does not necessarily establish that he was entrusted with the draft for the purpose of disposing of it without converting it into money. The jury might find from this evidence that his employment by Miss Casey contemplated that he would obtain the money upon the paper which she gave him, and that the money, when so obtained, would be her money and in the defendant's hands as her agent. The sugges- tion in the brief that he was employed merely as an errand boy is without force. An errand boy is an agent within the meaning of this statute, and is liable as such if he embezzles the money entrusted to his care. Surely an

errand boy sent to the bank with a draft would be guilty of embezzlement under this statute, if, after cashing the draft as directed, he converts the money to his own use with intent to deprive his employer of it. This question was fairly presented to the jury, and upon this point their verdict is undoubtedly justified by the evidence. The evidence as to the payment of the $1,700 was conflicting, and this question also was properly submitted to the jury.

6. It is contended in the brief that Mr. Robinson, while assisting the county attorney, was guilty of misconduct prejudicing the defendant and requiring a reversal. This question of misconduct of the prosecuting attorney was, so far as the abstract shows, first presented to the trial court in an affidavit of the defendant filed in support of his motion for a new trial. This, of course, was too late to raise such objections as these. If the prosecuting attorney attempted to take any unfair advantage of the defendant in the course of the trial, the matter should at once be called to the attention of the court. The trial court has ample power to protect the defendant in his rights, and the presumption is that, if requested, this would be done. This affidavit, filed upon the motion for a new trial, states that the prosecuting attorney, "when admonished by the court at the request of defendant, emphasized the misconduct and later desisted from it." This statement of itself would prevent the defendant from now urging the conduct of the prosecuting attorney as ground for a new trial. How or to what extent he "emphasized the misconduct" is not stated, and, if he "desisted from it" when admonished, the remedy which the law gives the defendant appears to have been effective. Very much, if not all, of the language of the prosecuting attorney now complained of appears to be such as is generally supposed to be within the line of legitimate argument.

7. Several instructions given by the court are complained of. It is said that instruction No. 2, which states "the material ingredients of the offense," fails to state

"the essential one, that the money was received in a fiduciary capacity." We do not think this instruction merits this criticism. The court told the jury that one of the material allegations was that at the time and place alleged in the indictment the defendant was the agent of one Lillian Casey, and that by virtue of such employment as agent he received from her the draft as alleged in the indictment; that the draft was her property, and that upon indorsing the draft he had received the $800, as alleged in the indictment, "the same being the property of the said Lillian Casey, his principal." It seems to be contended that if the jury found that he received the draft from her as her agent with instructions to use the proceeds for a certain purpose, but without definite instructions to obtain the money upon the draft, that in obtaining the money he was not acting in a fiduciary capacity. There does not seem to be any merit in this contention, especially in view of the defendant's own testimony above referred to.

In instruction No. 3 the court stated that "it stands admitted" that certain things took place, reciting them, and it is contended that this was error on the part of the court; but we cannot see that the defendant was prejudiced thereby, since he himself testified to the things that the court stated to the jury were admitted, and he was corroborated in this regard by other witnesses, and not disputed by any. Of course, the plea of not guilty put some of these facts in issue, but we cannot see that the instruction was prejudicial in view of the condition of the evidence in the record.

It is complained that the sixth instruction "takes from the jury the facts with reference to venue." In that instruction the court told the jury: "Whether or not this county and state is the proper place for the prosecution of this action is a question of law with which the jury has nothing to do, and you should not consider it." In the third instruction the jury are told: "Whether or not at the time and place alleged in the indictment he converted

the said money to his own use and embezzled the same * * * are questions of fact you have to consider and determine from all the facts and circumstances of the case as shown by the evidence." The fourth instruction given by the court was as follows: "You should consider whether in receiving the money on the draft he received it intending to hold and use it for the purposes for which the money was held by him as her agent as shown by all the evidence, or whether, on the other hand, he took it with the felonious intent of converting the same to his own use and depriving her of the same. You should consider all the evidence as it may bear upon the question how, as between the defendant and Lillian Casey, he held the money, and how he used it, and his intent in the use he made of it."

If the jury found that the defendant converted the money which he received upon the draft to his own use, and formed the intention then and there to deprive the owner of the same, and all this was done at the time and place as alleged, then the action was rightly brought in Lancaster county, and the jury would not be justified in rendering a verdict of not guilty because they thought the law ought not to allow the action to be brought in that county. In the light of these three instructions, this appears to be the idea of the court, and it seems clear that the jury must have so understood it, although the clause quoted above from the sixth instruction is perhaps unusual.

It is urged that the instructions are incomplete; that "something has been left out, * * * the one thing that would entitle the defendant to any relief whatever in the hands of the jury." It is not even stated in the brief what this one thing is. There is no claim that it was stated to the trial court, much less that an instruction was presented and asked that would cure the defect. The abstract shows that the court gave eight several instructions to the jury besides a complete statement of the allegations of the indictment. If it was desired that there should be

instructions upon other matters, a request to that effect should have been made to the trial court. No instruction was requested except the general one to instruct the jury to find the defendant not guilty.

Not finding any error requiring a reversal, the judgment of the district court is

'AFFIRMED.