STATE OF IOWA, Appellee, v. ANDREW JENSEN, Appellant.

**COUNTY ATTORNEY:** Assistance—Interest Disqualifying Private Attorney. The "interest" in a civil action which, on prompt objection, demands the exclusion of a private attorney from participating as assistant to the county attorney in the prosecution of a criminal action, is such only as *might*, irrespective of his character and standing, tend to make him less impartial in the prosecution of a criminal action than the law requires the county attorney to be,—such as *might* tempt him to advantage himself. Where a firm of attorneys had been employed to prosecute a civil action for damages for seduction, *held* that a member of the firm, even though he did not intend to participate in the trial of such civil action, was disqualified to assist in the trial of the criminal action based on the same facts. Sec. 305, Code, 1897.

*Appeal from Hamilton District Court.*—E. M. McCALL, Judge.

TUESDAY, JANUARY 9, 1917.

INDICTMENT charging defendant with the seduction of Hattie Arends. The Honorable D. C. Chase was employed as special counsel to aid the State. His so acting was objected to on the ground that he was disqualified by the provision of Section 305 of the Code of 1897, which prohibits an attorney from thus assisting the State if he be interested in a civil action in which the recovery might be had upon what is involved in the criminal prosecution. Mr. Chase was, notwithstanding the objection, permitted to act. Defendant was convicted, and appeals.—*Reversed and remanded.*

*Wesley Martin*, for appellant.

*George Cosson*, Attorney General, and *John Fletcher*, Assistant Attorney General, for appellee.

SALINGER, J.—But a timely and adequate objection was interposed. In a sense, this fact makes a case of first impres-

sion in this jurisdiction. No decision of our own is cited, and,

COUNTY ATTOR-
NEY: assist-
ance: interest
disqualifying
private attor-
ney.

on very considerable research, we have found none in which, on timely objection, a refusal to exclude the special counsel was sustained, or wherein, on such objection, the refusing to exclude him worked a reversal. In other words, all our cases, and many others, have not reached the question here presented.

*State v. Smith,* 108 Iowa 440, turns upon the failure to make timely objection. In *State v. Lounsbury,* 178 Iowa 555, we attach almost controlling importance to the fact that, while objection was made on the first trial, none was made on retrial before a different judge, and we hold that this failure to object waived the point.

*Snyder v. Tribune Co.,* 161 Iowa 671, at 679, deals with the part of the statute which prohibits the county attorney from engaging for a private party in any proceeding "pending or arising in his county," etc. The decision turns on that "the county attorney was not appearing in a civil case in the county of which he was the prosecuting attorney." The cases of *Commonwealth v. Williams,* 2 Cush. (Mass.) 582; *Rounds v. State* (Wis.), 14 N. W. 865, at 866; *People v. Schick* (Mich.), 42 N. W. 1008, at 1009, and *People v. Etter* (Mich.), 40 N. W. 241, deal with statutes which prohibit employment of counsel to aid the State by private parties interested in the prosecution, and turn on failure to allege or prove an employment by such parties. *State v. Rue* (Minn.), 75 N. W. 235, and *State v. Ward* (Vt.), 17 Atl. 483, hold that permitting one in private employ to assist, is a matter of discretion, even if the prosecution involve matters as to which the assistant is employed on the civil side. Of course, this is not so under our statute, which expressly prohibits such dual employment. *People v. Foote* (Mich.), 52 N. W. 1036; *Commonwealth v. King,* 74 Mass. 501; *Jackson v. State* (Wis.), 51 N. W. 89, and *Goemann v. State* (Neb.), 143 N. W. 800, decide merely that having

appeared for the State in parts of a criminal inquiry does not require exclusion at the final trial. *State v. Huegin* (Wis.), 85 N. W. 1046, at 1052, holds that private employment in habeas corpus does not work exclusion because the hearing on the writ is not a criminal case. *United States v. Twining,* 132 Fed. 129, and *Bellison v. Apland,* 115 Iowa 599, at 601, hold that the civil and the criminal case do not involve the same facts. *People v. Foote* (Mich.), 52 N. W. 1036; *Rounds v. State* (Wis.), 14 N. W., at 866; *Commonwealth v. Williams,* 2 Cush. (Mass.) 582; *Lawrence v. State* (Wis.), 7 N. W. 343, and *Commonwealth v. Knapp,* 10 Pick. (Mass.) 477, involve a state of facts under which it is manifest that the assistant had no interest in the civil case. *People v. Schick* (Mich.), 42 N. W., at 1009, holds: (1) private employment is not established; (2) if it were, there will be no reversal so long as counsel did no more than to argue a motion to quash information, asked a few questions of one witness, and then withdrew. *Whitcomb v. Collier,* 133 Iowa 303, and *State v. Rocker,* 130 Iowa 239, exclude counsel for the State who have been in the employ of the defendant, and can have no application here. In the present case, the civil suit was based on the alleged seduction for which defendant in both cases is being prosecuted, and Mr. Chase assisted in the trial on the indictment, throughout. It is self-evident that the cases to which we have referred do not settle that refusing to exclude him was rightful. They leave open whether he had such interest in the civil suit as is contemplated by our statute.

1a

Upon this question, a consideration of judicial history will be helpful.

Legislatures and courts were for a long time of opinion that private counsel should in no case be permitted to aid in criminal prosecutions. This is evinced in statutes prohibiting public prosecutors from engaging in private litigation or

taking private pay for prosecuting, under which the courts held that private counsel employed by the prosecutor could not assist, on the ground that when they assisted they were in fact public prosecutors, who took compensation from private parties. See *Biemel v. State* (Wis.), 37 N. W. 244, at 245-6; *Wight v. Rindskopf,* 43 Wis. 344; *State v. Russell* (Wis.), 53 N. W. 441; *Roberts v. People* (Colo.), 17 Pac. 637; *State v. Bartlett,* 55 Me. 200; *Meister v. People,* 31 Mich. 99, at 106; *Sneed v. People,* 38 Mich. 248, at 251; *Commonwealth v. Gibbs,* 70 Mass. 146. Were these to rule, Mr. Chase should have been excluded merely because ·his service for the State .was being compensated for by private persons. They do not rule, because we held in *State v. Shreves,* 81 Iowa 615, at 623-4, that private employing to assist the public prosecutor is not prohibited by Section 4, Chapter 73, of the Acts of the Twenty-first General Assembly (see *State v. Montgomery,* 65 Iowa 483, and *State v. Helm,* 92 Iowa 540), and because Sec. 305 of the Code of 1897 excludes only those who "are interested in any civil action," etc. Now, while the statute makes inapplicable the ground that private retaining of counsel violates prohibitions against acceptance of private pay by public officers for performing a public duty, that very statute preserves the potency of other arguments for said doctrine, because it makes its inhibition depend upon the presence of interest other than that to be served by a public officer—it forces the question whether one objected to has such an interest.

. It is enough to disqualify that the facts in the civil case were somewhat interwoven with the facts said to be involved in the criminal case (*Roberts v. People* [Colo.], 17 Pac. 637); the special counsel are to act with as much impartiality as the prosecuting attorney; counsel having a private interest "can in no fair sense be said to be employed by or on behalf of the people" (*Sneed v. People,* 38 Mich., at 251).

"A public prosecutor is a quasi judicial officer, retained by the public for the prosecution of persons accused of

crime, in the exercise of a sound discretion to distinguish between the guilty and the innocent." *Wight v. Rindskopf,* 43 Wis. 344. *State v. Russell* (Wis.), 53 N. W. 441.

It is said in *Flege v. State* (Neb.), 142 N. W. 276, at 278, to be clear "that the appointment of a partisan special prosecutor was not in the interest of the fair and impartial trial guaranteed by the Constitution." In *Rock v. Ekern* (Wis.), 156 N. W. 197, the contract for paying the special counsel was held to be against public policy, and on the ground that prosecutors in criminal cases should be free from prejudice and have no private interest in the prosecution. *People v. Hurst* (Mich.), 1 N. W. 1027, holds that the mischief aimed at by the exclusion "is the prosecution of criminals by counsel who represent private interests and cannot be supposed to be impartial." In *Meister v. People,* 31 Mich., at 107, it is said that it must be assumed that the legislature regard it as unsafe and opposed to even-handed justice that it should be made possible "to allow those who have a direct pecuniary interest in convicting a prisoner to take an active part in his trial;" that the legislature must have considered it improper "to allow the course of the prosecuting officer during the trial to be exposed to the influence of the interests or passions of private prosecutors;" that the prosecutor has a duty to be impartial not altogether unlike that of the judge himself, and that so exposing him will work against the maintenance of that impartiality; that such statutes "have been designed to secure impartiality from all persons connected with criminal trials." In the same case, it is said:

"The experience of trials shows that any other position is fallacious. When counsel are introduced into a cause, and aid in the trial or argument, it is little short of absurd to suppose they can be prevented from having their own way. It would be unseemly and unprofitable for one counsel during a trial to interfere with his associates' questions or argument; and competent auxiliaries would not be engaged on

terms which would subject them to open slights. We must look at things as they exist; and everyone knows that if a prosecuting attorney allows the counsel of private parties to intervene, it must usually be for the reason that they will save him labor, and assume the burden of the prosecution. The mischief which the law aims to avoid is prosecution by interested parties; and if such is the policy of the law, it ought to be carried out."

Recognizing that the retainer implies permitting activity, it was held, in *State v. Price* (St. Louis Court of Appeals), 85 S. W. 922, at 923, that, where the prosecuting witness himself was allowed to open and close to the jury, the court could not avoid considering his natural frame of mind, and that he was afforded license to recapitulate, elaborate, and emphasize his evidence in these addresses. In *Flege v. State* (Neb.), 142 N. W. 276, at 278, the special counsel had been retained by a suspect other than the one on trial, and it is held that, under such conditions, a fair and impartial trial of the accused person could not be reasonably expected. And upon the pronouncement in *Liniger v. State* (Neb.), 122 N. W. 705, that "public prosecutors . . . owe no greater obligation to the public than to a defendant charged with crime, and they should as zealously protect the one as the other," the *Flege* case says that, with the conscientious lawyer, the obligation to a client is one impossible to forget; and, as a result, the special prosecutor would find a constant inclination to ask of himself, "What effect will this evidence or argument have upon the rights of my first client, to whom I am still bound by every principle of law and honor? I should be faithful to my trust and protect Eichtencamp in every way possible. If defendant is convicted, Eichtencamp is forever cleared of the suspicion resting against him;" and the court adds that it is "forced to the conclusion that no honest and conscientious attorney could be able, nor should he if he could, withstand such an appeal."

In the light of all this it is that we must look to the

record to see whether the special counsel had such an interest in the civil suit for seduction as that it may justly be apprehended that the like interest would, in many cases, tend to destroy that impartiality which such counsel should possess.

II.  Mr. Chase testifies that he is a partner in Chase and Chase; his son is the other partner; the partnership has been retained in the suit for seduction; the son has served the notice; witness hadn't expected to participate in it, and therefore he had the son sign the notice individually.  To the question, "You expect to take part in the trial," he answered, "Not necessarily." He says he thought somebody else would help the son.  It was his idea that, if he (witness) participated in the prosecution, he would turn the case over to the son, and he could obtain such assistance as he saw fit under the circumstances; he does not intend to take part in the civil if he took part in the criminal action.

The State failed to call our attention to the fact that there was testimony on this point other than that of Mr. Chase, and that the unchallenged abstract presents the matter in such fashion as to lead one to think there was no testimony on the motion to exclude, except that of Mr. Chase; and, in strictness, there is none.  But the father of prosecutrix did say, on his cross-examination as a witness for the State, on the substance of the indictment, that he "hired Mr. Chase in the prosecution of this seduction case, and I have employed the young Mr. Chase to bring a civil suit for damages."

It is quite evident that the testimony of Mr. Chase is but an amplification, an analysis of what was testified to by the father of prosecutrix, and the testimony of the latter adds nothing to what Mr. Chase says.

Here is the proper place to say that the point in decision involves a public policy which must apply to all cases, and which is not so much concerned with whether a violation of that policy has worked an abuse in some particular trial, as

in repressing the possibilities of such mischief. It cares less for what has in fact been done than for what may be done in many other cases, if the policy be not adhered to. Thus, it has been enforced where the court "would cheerfully say in the outset that there is no gentleman of the bar in whose integrity and honor we have more confidence than in that of Mr. Chamberlain." *Commonwealth v. Gibbs,* 70 Mass. 146. In *People v. Hillhouse* (Mich.), 45 N. W. 484, it is held that the objection cannot be answered on appeal by showing that the assistant "acted very fair towards defendant." In *Flege v. State* (Neb.), 142 N. W., at 278, it was pointed out that one reason for the rule was that a conscientious lawyer would be the most in danger from the obligation to the civil client. In the *Gibbs* case, supra, it is said that, no matter how high the standing of the counsel, "the case must be decided on general grounds applicable to all cases." In *Meister v. People,* 31 Mich., at 106, it is said that enforcing the rule does not assume that there is anything dishonorable in such employment, but does assume that it is not proper to entrust the administration of criminal justice to any who will be tempted to use it for private ends, and it is assumed that a retainer from private parties tends to this. So, here. We are in position to say from personal knowledge and from our experience on this bench that the standing of Mr. Chase as a man and as a member of his profession is of the highest, and that no conclusion we reach here is in disregard of that fact. If the rule of policy involved is not to be enforced, we know of no case in which that might more safely be omitted than in one wherein this gentleman appeared as counsel for the State. But we are not passing upon the danger of having Mr. Chase appear, but dealing with a general policy.

"The objection to them rests in their tendency, not in what was done in the particular case." *Hazelton v. Sheckels,* 26 Sup. Ct. Rep. 567, at 568.

So, we may not be governed by what Mr. Chase did,

might do, would do, or refrain from doing. If his being allowed to act is sustained because of his evidence, we must hereafter sustain the retention of any lawyer, if substantially the same evidence is put in.

"The law will not concede to any man, however honest he may be, the privilege of making a contract which it would not recognize when made by designing, corrupt men." *Sweeney v. McLeod* (Ore.), 15 Pac. 275, at 278.

While, as said, we reach the one question that is left for decision without direct authority upon the point, we are not without clear guides to aid us. There is the statute, the aim of which is to bar any from serving as public prosecutor who has an interest in a civil action which will make or tend to make him less impartial and less free from bias than the law requires the regular public prosecutor to be. We find that such statutes are to be regarded as "positive and peremptory." *People v. Hillhouse* (Mich.), 45 N. W. 484, 485. In *State v. Lounsbury,* 178 Iowa 555, we say that the statute was evidently framed with the purpose of preventing counsel in a civil case from prosecuting a criminal one involving the same matters and things as the civil one, so long as he is an attorney in each case. In that case it is found that the special counsel did not agree to participate in the criminal case until he had terminated an employment in the civil case. And this termination is, as it should be, given practically controlling effect.

Other matters that are given consideration are: (1) that it is not established that the challenged attorney had employed the one who finally tried the civil case; (2) that, though as a witness the special counsel avoided answering whether his client had compensated him for his fees, yet he did testify that he had no interest, contingent or otherwise, in the result of the divorce case. In *Goldsberry v. State* (Nebr.), 137 N. W. 1116, at 1118, the determining point is that, though the assistant was retained by private individuals to prosecute, and he was paid in part, he renounced any employment by

the private individuals and returned all fees paid him before engaging as an aid in the prosecution.

In *Meister v. People,* 31 Mich., at 107, it was said:

"As the liability of the insurance companies on their policies would be avoided by proof that the property was burned by the assured, the case is one within the statute; and counsel in the interest of the insurers should not have been allowed to appear."

On whether we should establish such a rule for all as will sustain the retention of Mr. Chase, the holdings of the *Lounsbury* and the *Goldsberry* cases, supra, as to what will not exclude, are pregnant with suggestion as to what should bar. · In both, the emphasis is put on the fact that there was absolute renunciation of the employment in the civil case. In the first, it is further pointed out that the special prosecutor had no part in selecting his successor in the civil action, and he testified that he had no interest, contingent or otherwise, in that action. The most that can be said of the evidence here is that one partner has turned over a civil suit, in which the firm has been retained, to his son and partner for management and trial, and that he does not intend to participate in its trial if he.does participate in the prosecution. He says little more, in effect, than that it is not his expectation to participate in both trials. Assuming this to be the evidence and attitude of some men who lack what Mr. Chase has, and there is nothing to prevent their being paid their half of the partnership fee, nor to keep them from changing their mind and taking a full part in the civil suit; and, as said, we must think of such men, too, when we are asked to make or apply a general rule. It may be said fairly that even the nicest sense of honor would not be precluded by this evidence from more than participating in the *trial* of the seduction suit. Does this work that the father and partner has no interest in that suit? May we say that it would not be felt to advantage D. C. Chase if·his partnership, represented by his son, were successful, rather

than defeated, in the civil action? May we say he can exclude from his mind a natural desire for that success, and the thought that success therein might, in a measure, at least, depend upon succeeding in the criminal prosecution? Can he deal with the criminal case as though the civil action had never been put in charge of his partnership, or been and remained in the management of his son and partner? If he can, may we assume as much for all lawyers? Keeping in mind what is sound public policy, we are driven to the conclusion that Mr. Chase was to such an extent interested as an attorney in a civil action in which a recovery depended upon what was involved in the criminal prosecution, as that, both as a matter of sound policy and in obedience to the command of the statutes, he should not have been permitted to participate when the defendant in the criminal prosecution objected to his so doing. It follows that, for this reason, the judgment of conviction must be and the same is—*Reversed and remanded.*

Gaynor, C. J., Ladd and Evans, JJ., concur.