STATE OF IOWA, Appellee, v. JOHN LILTEICH, Appellant.

**CRIMINAL LAW:** Trial—Course and Conduct—Private Counsel.
1   Whether private counsel will be permitted to assist the county attorney in the trial of a criminal case is a matter resting in the sound discretion of the court, with the exception always that private counsel interested in a civil action involving the same state of facts must not be permitted to so appear.

**CRIMINAL LAW:** Evidence—Other Offenses—Intoxicating Liquors.
2   On the trial of an indictment charging the unlawful *sale* of intoxicating liquors, evidence is admissible which tends to show that, during the time in question, the accused was actively engaged in the unlawful *manufacture* of such liquors.

**TRIAL:** Instructions—Applicability to Evidence—Presumption. When
3   certain testimony is admissible only for some limited or particular purpose, it will be presumed (in the absence of any contrary showing) that the court properly limited the jury in its consideration of such evidence.

**INTOXICATING LIQUORS:** Unlawful Sale—Sufficiency of Evidence.
4   Evidence held ample to sustain a verdict of guilty of the unlawful sale of intoxicating liquors.

**APPEAL AND ERROR:** Reservation of Grounds—Failure to Reserve in
5   Trial Court. Alleged misconduct of counsel in argument will not be reviewed for the first time on appeal.

*Appeal from Louisa District Court.*—OSCAR HALE, Judge.

DECEMBER 15, 1922.

REHEARING DENIED JUNE 22, 1923.

INDICTMENT of defendant on charge of selling intoxicating liquor in violation of law. Trial to a jury, which returned a verdict of guilty, and from the judgment thereon, the defendant appeals.—*Affirmed.*

*Hirsch & Riepe,* for appellant.

*Ben J. Gibson,* Attorney-general, *B. J. Powers,* Assistant Attorney-general, and *W. E. Jackson,* County Attorney, for appellee.

WEAVER, J.—I.  The indictment in this case was found by the grand jury of Des Moines County, in which jurisdiction the alleged offense was committed, but on application of the defendant for change of venue to another county outside of that judicial district, on the alleged ground of excitement and prejudice against him in Des Moines County and district which would prevent his obtaining a fair and impartial trial therein, the cause was sent to the district court of Louisa County, where all further proceedings were had.

A reversal of the judgment below is sought on the following grounds: Error is alleged upon the overruling of defendant's objection to the appearance of F. E. Thompson, Esq., to assist

1. CRIMINAL LAW: trial: course and conduct: private counsel.

the county attorney in the prosecution. The objection so raised was stated by defendant's counsel in the following words:

"If the court please, I want to object at this time to the appearance of Mr. Thompson as additional counsel in the case, because I do not think the laws of the state of Iowa permit it, and it is against public policy, as expressed by the Supreme Court."

In support of this objection, defendant called Thompson to the witness stand, and obtained his statement that he had appeared as attorney for one Jay Brown, who had been indicted for alleged perjury in testimony before the grand jury in the instant case. Thompson further testified that he had appeared as attorney for one Marion Bates, indicted on charge of nuisance, said Marion Bates being the brother of one Fred Bates, said to be prosecuting witness in the instant case. On this showing, the objection to the appearance of Mr. Thompson was overruled.

That this ruling was not erroneous is too clear for argument. There is no statutory prohibition of the employment or appearance of counsel to assist the public prosecutor in the trial of a criminal case, except such as is found in Code Section 305, which forbids such appearance by an attorney who is interested in a civil action involving the same state of facts. There is no evidence whatever that Mr. Thompson was then interested in any civil action the result of which depended upon the truth or alleged truth of the criminal charge against the defendant. In the absence of any ground for objection upon said statutory

prohibition, the allowance of additional counsel for the State has always been regarded by this court as being within the sound discretion of the trial court. *State v. Fitzgerald,* 49 Iowa 260; *State v. Montgomery,* 65 Iowa 483; *State v. Crafton,* 89 Iowa 109; *State v. Helm,* 92 Iowa 540. The case of *State v. Jensen,* 178 Iowa 1098, is not at all in point. That case involved the application of the statutory prohibition above cited, and nothing more. The objection here made was properly overruled.

II. Error is next assigned upon the admission of testimony tending to show that defendant was engaged in the unlawful manufacture of intoxicating liquor. A witness for the State,

2. CRIMINAL LAW: evidence: other offenses: intoxicating liquors.

one Jay Brown, testified that he had been a member of the police force of the city of Burlington, as a patrol driver, for about three years, and had left that service in October, 1920, because he could "make more hootch." He further said that he was engaged in "making hootch" while still on the force, using for that purpose an "abandoned slaughterhouse" at or near his home; that the defendant, Lilteich, furnished him the still, and showed him how to use it. According to defendant's abstract, the witness further testified as follows:

"John Lilteich visited at my house after I started making hootch. He furnished me with a still. The first time I remember him being at my place, he came out to show me how to make it. He got that still in July, right after the Regatta, sometime before the 15th. He told me one night that I had a place to make hootch, and that he would give me a still; and before I got the still, he gave me the money to get the sugar with. I didn't have any money, and I got it from the Benner Tea Company—$28 for the first sack of sugar; and he instructed me how to set the mash; and when we was ready to run, why, we went down town and got this still,—Lilteich and I. Down towards Angular on South Main Street. There was a big car standing there, and he told me to go with him, and I got in the back seat, and Lilteich and this other man. I told them where to drive—2500 Division Street. We didn't go near the house, but stopped at the foot of the hill, and I carried the still up, and then the next day Lilteich came and showed me how to run it. Put in a batch of mash, and we got five gallons of liquor and disposed of it. We made more

than 250 gallons, all told. I know that he disposed of over 230 gallon. Some of it we would drink, and what we didn't drink, he took away. I didn't get very much. I was supposed to get half, but didn't. He had the money, and wouldn't pay it. I never knew him when he wore a uniform. He was a motor-cycle cop at that time. Sometimes he took the stuff away in the motor-cycle, and sometimes in a Ford car, and sometimes in a taxicab. There was other fellows with him. One time, I am certain in my own mind it was Ogden in the car. Ogden is commissioner of public safety down there in Burlington. We ceased making about the first of February. I quit because I was moving out of town. I made it from between the 1st and 15th of July, 1920, to about February 1, 1921. Lilteich disposed of most of the liquor. He came for it usually after dark. Sometimes only one gallon and sometimes five gallon. In the side car of the police motor cycle or in an automobile. At first, when we started, he was getting $25 a gallon, and it dropped to $20, and finally, in the year '21, it dropped to $15. * * * Fred Bates was at my house while I was making liquor at 2500 Division Street. He knew I was making liquor. I told him. I don't remember that Bates and Lilteich were ever there together. I told Bates John and I had a still and was making liquor. I knew Fred Bates before I went out to Division Street, before I quit the police force. I had been at his house a time or two, with Goodman one time, and several times with John Lilteich.''

The witness was subjected to a very rigid and minute cross-examination, which developed more or less of matter affecting his general credibility, but did not involve him in any material contradiction of the alleged facts to which he had testified on direct examination.

The wife of Brown, testifying for the State, said that, while she and her husband were living at the ''slaughterhouse place,'' defendant was there very frequently; that he ''was in partnership with her husband, making hootch,'' beginning some time in July, 1920. She adds:

''Sometimes he would come in the police motor cycle and sometimes in an automobile. Sometimes he would carry away jugs, and sometimes bottles, filled with hootch.''

Fred Bates, spoken of by defendant as the "prosecuting witness," testified as follows:

"I run a boarding house and restaurant near Showers Brothers' plant. Have lived in Burlington forty years, and I have known John Lilteich about two years or a little over. We were pretty well acquainted. He visited with me and I with him. He came to my place of business the first month he was on motor cycle,—the first month he was on police force. I think it was in June. I am pretty certain it was the first time he was in the police department—the first month he was motor-cycle cop. He came to the restaurant, and asked me if I wanted to buy some hootch. I told him I was not prepared to buy any. He said he knew a fellow that had five gallon, and I told him I didn't have money to buy it with, but would probably have it in a few days; and he said he would go and ask the man he was in partnership with. He left the place. He came back in the afternoon of the same day. I bought it. I asked him who the man was, and he said him and Jay Brown were in partnership, and he got $60 and Jay $40 out of $100. That is the way they split the profit. He delivered the liquor to me at night,—two gallons,—the same day. I paid him two different times. I paid him $50 at one time and $75 another time. I bought altogether five gallons. I paid him $25 a gallon. After the first delivery, he delivered the other in about three days. He brought it to my house in the evening—about dark. Before the purchase, I sold him malt and sugar. I sold him several gallons and several cases. He told me, the day that I bought the liquor, that he was in partnership with Jay Brown, on the first trip to my place. Nobody was with me when he delivered the liquor. He delivered it in a Ford car in a two-gallon jug. He made the next delivery in two-gallon and one-gallon jugs, in a Ford car."

The defendant, testifying in his own behalf, denied the truth of the charge made against him and of the story told by Brown, Mrs. Brown, and Bates. He also produced numerous witnesses to testify to contradictory and inconsistent statements alleged to have been made by Brown, and admissions by him that he had not told the truth to the police commissioners and the grand jury. Witnesses were also offered to impeach his character for veracity.

The foregoing recitation has been necessary to a full under-
standing of the point made by counsel against the admission of
the testimony tending to show defendant's participation in the
unlawful manufacture of liquor. The objection thereto is not
available to the defense for at least two sufficient reasons. In
the first place, its introduction was not challenged by proper
objections in the trial below, and may not be raised for the first
time on appeal; and second, for the still better reason that the
fact, if it be a fact, that, at the time of the alleged sale of liquor
to Bates, defendant was engaged in the surreptitious manufac-
ture and sale of such liquors, affords legitimate corroboration
to the story of Bates as to the sale to him. It does not present
a case of an attempt by the State to convict the accused of the
crime charged, by proof of his guilt of another distinct offense.
By way of illustration, let us suppose that the offense charged
was the passing of counterfeit money, and the State had offered
proof that, at the time of the uttering or passing of the spurious
coin, the accused was engaged in producing such counterfeits,
or was in possession of counterfeit plates or dies or tools used
for such unlawful business, would there be prejudicial error in
admitting such evidence? Clearly not. No more was there
any error in admitting the evidence here, as having a legitimate
bearing upon defendant's guilt or innocence of the offense for
which he was indicted. And even if it should be said that the
3. TRIAL: instruc-  effect of the evidence so introduced should have
tions. applicabil-  been limited by the court in its charge to the
ity to evidence:
presumption.  jury, it must be presumed that the court did
its duty in that respect. The abstract does not set out the
court's charge, except a single paragraph thereof; and in the
part so quoted, the jury was told that the evidence of defendant's
connection with the manufacture of liquor should be considered
only so far as it may be connected with or corroborative of the
alleged unlawful sale to Fred Bates. The assignment of error
upon this instruction is not sustained by the record.

III. It is finally urged that the verdict of guilty is without
substantial support in the evidence. For this
4. INTOXICATING  proposition, principal reliance is based upon the
LIQUORS: unlaw-
ful sale: suffi-  claim that the testimony of the witnesses Brown,
ciency of evi-
dence.  Mrs. Brown, and Fred Bates is false. But it is

elementary that assaults upon the credibility of witnesses are for the consideration of the jury, which may, nevertheless, believe the substantial truth of the testimony, notwithstanding the attempted impeachment. It does not follow, as a matter of law, from evidence of impeaching facts and circumstances, of inconsistent admissions and denials, or even a proved general reputation unfavorable to his character for truth and veracity, that a witness may not tell the truth on the stand, or that the jury may not find his story so reasonable and consistent or so supported by other facts and circumstances as to be worthy of belief. The evidence of guilt in this case is both direct and positive, as well as circumstantial, and fully sustains the verdict. The evidence was such, also, that the jury might reasonably infer that there had been an active and persistent effort on the part of defendant to get rid of or neutralize the effect of Brown's testimony. Brown, with the help of defendant, removed across the river into Illinois, a jurisdiction into which compulsory subpœna could not issue from an Iowa court. While there, he was repeatedly visited by defendant, by defendant's counsel, and by a coterie of defendant's friends, by whom he was solicited and induced to sign recantations and denials of his testimony given before the police commission, and to involve himself in a maze of contradictions. To "cap the climax," an indictment was procured against him charging him with perjury, a fact which the defense persistently pressed upon the attention of the trial court in this case, as affording a sufficient reason for acquitting the defendant on the offense charged against him. It is not too much to say that the case has its origin in a tainted atmosphere, unalleviated by any spark of personal merit on the part of either accuser or accused,—an apt illustration of the truth of the saying that, when rogues fall out, justice occasionally gets its dues.

IV. In support of the motion for new trial, defendant filed an affidavit to show alleged misconduct on the part of counsel for the State in argument to the jury. It is sufficient to say that no objection was raised to the argument at the time, nor any opportunity given the trial court to pass upon the question of whether counsel had abused their privilege in addressing the jury, nor any record made of the alleged improper statements,

5. APPEAL AND ERROR: reservation of grounds: failure to reserve in trial court.

except in the affidavit supporting the motion. It is a reasonable general rule that questions of misconduct so raised will not be considered on appeal. It is conceivable, perhaps, that misconduct of counsel in argument may be so peculiarly flagrant and reprehensible as to justify the condemnation of this court on appeal; but there is nothing in the record to bring this case within such exceptional class.

The case was fairly tried, the conviction is well supported by the evidence, and the fine imposed is remarkably moderate. The judgment appealed from is—*Affirmed*.

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.