## NETTIE L. SMITH v. STATE.

No. A-10195.    April 19, 1944.

(148 P. 2d 206.)

344

Bruce & Rowan, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., of Oklahoma City, for defendant in error.

BAREFOOT, J. Defendant, Nettie L. Smith, was charged in the district court of Oklahoma county with the crime of embezzlement; was tried, convicted and sentenced to serve a term of three years in the State Penitentiary, and has appealed.

It is contended by defendant that the judgment and sentence in this case is contrary to law, and that the evidence is insufficient to support the same.

The facts as revealed by the record are that the defendant, Nettie L. Smith, lived in Oklahoma City with her husband, Alex Smith. Rhiner Ivey lived about 15 miles northeast of Oklahoma City. Nettie L. Smith and Rhiner

Ivey first became acquainted in 1919, when Rhiner Ivey went to the defendant for some treatments for rheumatism. All of the parties are Negroes. Rhiner Ivey had at one time owned 80 acres of land in Oklahoma county, and was still the owner of 43 acres in the early part of 1940, when she decided to borrow some money on the land, for the purpose of making improvements thereon. She went to the defendant, taking the deed she had received to the 80 acres of land, and talked with defendant about a loan. She wanted to borrow $1,500. Defendant agreed to assist her in securing a loan on her property. In order to carry out this agreement, Rhiner Ivey executed a deed, conveying the entire 80 acres to the defendant (copying the description from the original deed to Rhiner Ivey). According to the testimony of Rhiner Ivey, defendant was to secure the loan in 10 or 15 days, and then deed the property back to her, giving her the $1,500. Defendant claimed that the agreement was that she was to have $500 and Rhiner Ivey $1,000. After some negotiations, the defendant was unable to secure a loan of $1,500 on the property, but found a party who agreed to lend her $1,000. Defendant and her husband executed a mortgage on the property to secure the $1,000 note. The party from whom she was borrowing the money ordered an abstract, and when he found that she only had title to 43 acres, refused to let her have $1,000. He paid out a total of $139.65 for the abstract, taxes due, attorney fees, etc., and gave the defendant two checks, at different dates, aggregating $505.35, and credited the $1,000 note with $355.

The evidence revealed that all of the money received by defendant was appropriated to her own use and private benefit, and none of the proceeds were ever delivered by her to Rhiner Ivey, the owner of the land. It was also revealed that the defendant attempted to secure another

loan on the land, with the intention of paying off the first loan, and securing additional funds. This deal was never consummated. Defendant later filed a petition in bankruptcy, and during these proceedings she executed a deed reconveying the land to the prosecuting witness, Rhiner Ivey; but no part of the $505.35 was at any time paid by defendant to the prosecuting witness.

Under these facts, it is the contention of defendant that by reason of a deed having been executed by Rhiner Ivey to defendant, it was necessary to prove that an express trust existed, and that under the law this could not be proven by parol testimony. Authorities are cited to sustain this proposition. A great part of the brief of defendant is devoted to a discussion of the law as it relates to express trusts, and resulting trusts, with reference to the conveyance of real estate. We do not see that any such issue is material to the issues here involved. Under the evidence the defendant was the agent of Rhiner Ivey for the purpose of securing a loan upon her property, and according to her testimony to deliver to her the proceeds of the loan when the deal was consummated. The prosecuting witness, with complete confidence in defendant, deeded her the property for this purpose. Defendant by her own testimony admits that she received the sum of $505.35 and appropriated the same to her own use. Her testimony was that she was to have the privilege of using $500 of the money. The court in a clear-cut instruction submitted this issue to the jury, instructing them that if they found that Rhiner Ivey had agreed with defendant that she could use approximately $500 of the money, or if Rhiner Ivey knew she had received the $505.35 and gave defendant permission to keep the same, or if she agreed that defendant could repay the same when due according to the terms of the note and mortgage, that it would not

constitute embezzlement, and that they should return a verdict of not guilty. This instruction clearly presented the defense of the defendant, and the jury in returning a verdict of guilty clearly found against the contention of defendant.

Tit. 21 O. S. A. 1941 § 1451 defines embezzlement:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted."

The statute under which defendant was charged is Tit. 21, O. S. A. 1941 § 1454, which is as follows:

"If any person being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator or collector, or being otherwise entrusted with or having in his control property for the use of any other person, or for any public or benevolent purpose; fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

In construing the above statutes, it is said, in the case of State v. Duerksen, 8 Okla. Cr. 601, 129 P. 881, 882, 52 L. R. A., N. S., 1013:

"When one converts the money of another to his own use, without permission from the lawful owner thereof, the law infers a fraudulent intent, and punishes the act of embezzlement. The fact that a person never concealed the taking or converting of the money received, as the money in this case was, and promises to return it, does not make the act lawful or any the less embezzlement under the statute."

See, also, Abernathy v. State, 69 Okla. Cr. 142, 101 P. 2d 634.

In Brill's Cyclopedia Criminal Law, Vol. 1, pg. 876, section 523, it is said:

"If money or property is delivered by a third person to an agent or servant for or on account of his principal or master, the agent or servant has the possession, and is in the position of a mere bailee, until he has delivered the money or property to the principal or master, or put it, intending to do so for the principal or master, where it is his duty to put it, and if he fraudulently converts it before this, his offense is embezzlement."

And on page 881, section 526:

"An agent is one to whom is delegated authority to act for and in the name of his employer, and who is not under his employer's immediate direction and control. The relation may exist without any formal appointment. And a person may be an agent, and within the statute, though he may be paid by commissions out of the moneys received by him for his employer; though he may receive no compensation at all; and though he may be employed, not for any particular length of time, but for a particular occasion only." People v. Pyle, 44 Cal. App. 130, 185 P. 1019; Hall v. State, 21 Ariz. 261, 187 P. 577; State v. Phillips, 105 Minn. 375, 117 N. W. 508; Goldsberry v. State, 92 Neb. 211, 137 N. W. 1116; People v. Treadwell, 69 Cal. 226, 10 P. 502.

The case of State v. McWilliams, 267 Mo. 437, 184 S. W. 96, 99, is one where the facts are very similar to those here presented. One Charles E. Greger owned a farm on which there were two deeds of trust. He negotiated with one McWilliams to secure a loan thereon for the purpose of paying off the two deeds of trust. McWilliams secured a loan for $3,400 and received the proceeds, less certain expenses amounting to $102. He did not pay off the two deeds of trust nor in any way account to Greger for the proceeds. He deposited the check to his own account, and appropriated the proceeds to his own use and benefit. The Supreme Court of Missouri there said:

"Embezzlement is the fraudulent conversion of another's property by one to whom it has been intrusted or

into whose hands it has lawfully come; and when it has been embezzled or converted, within the meaning of the statute, it is not an improper inference that the act was intended by the perpetrator of the same. While it is true that no one can be convicted of a felony in the absence of a criminal intent, such an intent in a case of embezzlement may be inferred from a felonious or fraudulent conversion, and need not be alleged in the information or indictment. * * *

"The uncontroverted facts show that appellant was the agent of the borrower (Greger) in securing this loan. * * *

"Upon the transmittal, therefore, of the check to appellant by the company it parted with the title to same, and the nominal ownership therein passed to the appellant, who became burdened, upon the receipt of same, with the obligation to either indorse it to Greger, convert it into cash, and pay the proceeds to him, or apply it to the discharge of the prior lien on Greger's land. He did neither, but indorsed same to a bank, and had the amount called for therein placed to his credit. This created a technical appropriation, as the money realized from the check belonged to Greger, but until appellant indicated a purpose to do with this money as the thief does with the property of another in a case of larceny such a felonious conversion did not occur as to create the crime of embezzlement. But when it did occur the crime was complete. Nor is it material as to the manner in which the money was drawn out if converted to appellant's own use. State v. Woodward, 171 Mo. 593, 71 S. W. 1015; State v. Moyer, 58 W. Va. 146, 52 S. E. 30, 6 Ann. Cas. 344.

"Appellant's felonious intent is to be measured by his act. According to the testimony, to which the jury gave credence, the sufficiency of which is ample to sustain the verdict, it is shown that appellant, when the loan had been secured, evaded Greger. He concealed the fact from him that the loan had been consummated and that he had received the check. He placed the same to his own credit

350

in a bank, and admits that he drew the money out for his own use and has not accounted for same. These facts sufficiently show a felonious intent on the part of the appellant, and, his relation to Greger as an agent having been established, his act is clearly within the purview of that general rule that, if one who has the possession of the property of another, instead of delivering it to the owner as his duty requires, neglects or refuses to account for it or otherwise diverts it so as to exercise dominion over it to the exclusion of the owner and to make it his own, he is guilty of embezzlement. State v. Lentz, 184 Mo. [223] loc. cit. 239, 83 S. W. 970.

"Appellant complains because the trial court permitted the state to show by the witness Peterson that the appellant had neither used the money received from Bartlett Bros. in paying off the prior liens nor had he returned the money to the loan company. The question at issue was whether or not the money so received by him had been applied as directed by Greger, and it was therefore pertinent for the state to show that the appellant had violated his directions as to the manner in which the loan should be applied.

"Further objection is made that the court erred in permitting the state to show that the check received by appellant from the loan company had been indorsed and deposited to his credit in a bank, and had later been checked out by him. The check was made payable to appellant, and necessarily under the authority given him by Greger he could not commit the crime of embezzlement until after it had been indorsed and converted into money. If in the latter form he used it as directed, he was guiltless; on the other hand, if he used the money for purposes other than to pay it to Greger or to discharge the prior liens, he was guilty as charged. It is manifest, therefore, that the court's ruling in this respect was not erroneous. Moreover, appellant admitted on the witness stand that the check had been received and deposited and the money drawn out of the bank by himself or others authorized to do so, and that he had used the same for personal purposes. Therefore,

whether the action of the trial court in permitting a witness to state the condition of the bank was erroneous is immaterial, as the evidence given by such witness was in accord with that given by the appellant himself. Harmless error will not work a reversal. * * *

"The instructions given by the court advised the jury as to the elements constituting the offense charged and the punishment prescribed therefor; that the charge is sustained if it was shown that the money was embezzled in one sum or in less amounts at different times; that want of assent to the appropriation of the money by the appellant may be shown either by direct and positive evidence or from all the facts and circumstances in the case; what facts must appear from the evidence to constitute the appellant the agent of the prosecuting witness; that the crime may be established either by direct or circumstantial evidence; that the criminal intent to deprive the owner of his property may be inferred when conversion is established. Other formal instructions were given as follows: As to the presumption of innocence and reasonable doubt; the weight to be attached to appellant's testimony; that the jury is the judge of the credibility of witnesses; that, if the prosecuting witness gave his consent for appellant to make personal use of the money in question, a verdict of acquittal must be returned; that, if it appears from the evidence that the appellant was the agent of the loan company and received the money conditionally, he must be acquitted; and that the mere failure to pay over the money to his principal does not constitute the crime charged. These instructions fully advised the jury as to all the principles of law arising under the evidence in this case, and are in substantial compliance with similar ones which have heretofore met with the approval of this court."

See Hanna v. Minnesota Mut. Life Ins. Co., 241 Mo. 383, 145 S. W. 412.

The motion for new trial in the case at bar was overruled on June 16, 1941, and judgment and sentence was entered on the same date . On August 22, 1941, a motion

for new trial upon the grounds of newly discovered evidence was filed. Attached to this motion was an affidavit of the defendant as to what her husband, Alex Smith, would testify. A hearing was had on this motion on September 26, 1941, and Alex Smith, the husband of defendant, testified to a conversation had with the prosecuting witness, Rhiner Ivey, prior to the securing of the loan, and also after the trial of this case.

Rhiner Ivey was also placed upon the stand at this hearing, and she testified that someone had attempted to get her to change her testimony after the trial. She had made some written statement to someone who went to her home to see her, and she had consulted with the trial court with reference to the statement, telling him to pay no attention to the written statement.

The court heard this evidence, and in his discretion overruled the motion. We do not think there was any error therein. There is nothing to show that the defendant used any diligence to secure this evidence. It was with reference to the main issue involved in this case, and if her husband knew anything to the contrary, she should certainly have known it prior to the time of the trial of the case. There is nothing in this evidence which would have likely changed the verdict of the jury theretofore rendered.

Finding no error in this record, we are of the opinion that the judgment and sentence of the district court of Oklahoma county should be affirmed. It is so ordered.

JONES, P. J., concurs. DOYLE, J., not participating.