[Civ. No. 6483. First Appellate District, Division One.—December 17, 1928.]

E. A. TISCHHAUSER, Appellant, v. LEO JARVIS, Respondent.

Samuel F. Hollins for Appellant.

B. M. Benson for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from a judgment in favor of defendant, the action being one instituted by plaintiff against defendant on an alleged agreement to indemnify plaintiff and the New Amsterdam Casualty Company of New York against loss suffered in executing a bail bond to secure the appearance of one Henry Simon before the justice's court of the fourth township of Fresno County, wherein Henry Simon was charged with. "manufacturing intoxicating liquor" and "possessing apparatus for the manufacturing of intoxicating liquor," and who failed to appear for preliminary examination on the former and trial on the latter charge.

The second amended complaint alleges that one Henry Simon was arrested under a complaint charging him with the manufacture of intoxicating liquor, also under another complaint charging him with possessing apparatus for the manufacure of intoxicating liquor, and that he was admitted to bail in the sum of $750 under the first charge and in the sum of $250 under the second charge; that for the purpose of securing the release of Henry Simon the defendant Leo Jarvis and Henry Simon executed and delivered to this plaintiff, E. A. Tischhauser, a certain indemnity agreement, "a true copy of which said application and agreement is hereto attached and marked 'Exhibit A' and is hereby referred to and made a part hereof," wherein Leo Jarvis and Henry Simon agreed to indemnify plaintiff against all claims, demands, loss, expenses, or damage which he might incur, or for which he might become liable by reason of the execution by the New Amsterdam Company of New York of such undertaking of bail; that pursuant to the application and indemnity agreement this plaintiff caused the New Amsterdam Casualty Company of New York to make, execute, and acknowledge before the said justice's court its undertaking of bail in the sum of $750, and that thereupon the said Simon was discharged from custody. It is further alleged that he was admitted to bail on the second charge and thereupon the New Amsterdam Casualty Company of New York made, executed and acknowledged before the

justice its undertaking of bail in the sum of $250 and that thereupon Simon was discharged from custody; that at the time set for the hearing Simon failed to appear and the bail was declared forfeited. The complaint then alleges the expenditure by the plaintiff of the sum of $574.80 in an effort to find Simon and produce him for trial, but that he was unable to find him; that thereafter he, the plaintiff, "appointed an attorney to represent the said Henry Simon, that said attorney caused to be entered on behalf of said Simon a plea of guilty to said charge of possessing apparatus for the manufacture of intoxicating liquor, and the court thereupon sentenced the said Simon to pay a fine of $100.00, which the plaintiff then and there paid; that by reason of the payment of the said fine the said attorney obtained from the said court a dismissal of the charge of manufacturing intoxicating liquor and an order revoking the forfeiture of the said bonds and exonerating the said bail; that plaintiff paid to the said attorney for his services the sum of $5.00, which said sum was a reasonable fee for said services."

"Exhibit A" attached to the second amended complaint contains the following provisions: "The undersigned jointly and severally covenant and agree to at all times indemnify and keep indemnified and save and hold the company and E. A. Tischhauser, or either of them, harmless from and against any and all claims, demands, loss, expenses or damages which they may sustain or incur, or for which they may have become liable by reason of the execution by them of said bond or undertaking, and to make good and reimburse to the company and E. A. Tischhauser all sums of money, which they, or either of them, may pay or become liable to pay in consequence thereof, including counsel and attorneys fees incurred or paid by them. It is understood and agreed and it is hereby made a condition and a part of the consideration hereof that for the purposes of this application and indemnity agreement, and of the undertaking of the undersigned to indemnify and save harmless the company and E. A. Tischhauser, or either of them, liability for claims, demands, loss, expenses or damages, shall be considered to attach to or be incurred by the company and E. A. Tischhauser, or either of them, as soon as the bail or surety bond, or either of them, herein referred to, shall have been declared forfeited by the court having jurisdiction of said cause or matter. . . . The undersigned hereby makes, constitutes

and appoints any attorney-at-law admitted to practice in the courts of the State of California, who is selected by the New Amsterdam Casualty Company of New York or by E. A. Tischhauser, to legally represent me in substitution of my Attorney or Attorney of Record, and, if the charge be, or be reduced to a misdemeanor, to appear and go to trial in my absence, or to appear and enter a plea of guilty to the offense with which I am charged, or to any other offense included therein or to any other offense which carries as a sentence therein less or the same penalty as is prescribed for the offense or offenses with which I am now charged,'' etc. The prayer of the complaint is for $814.80, made up of the following items: $135 balance due as premium on bonds; $514.80 money expended in searching for Simon; $100 fine paid by the casualty company and $5 attorney's fee.

Defendant filed a demurrer, assigning numerous reasons why the second amended complaint does not state facts sufficient to constitute a cause of action. The demurrer being overruled, defendant answered, admitting the allegations of the complaint with the exception of the allegations as to the money spent in prosecuting search for Simon; the services of detectives, traveling expenses, and long distance telephone calls; the appointment of an attorney to represent Simon and the payment of the fine, all of which are denied on information and belief.

When the case was called for trial the defendant objected to the introduction of any evidence on the ground that the complaint failed to state a cause of action against the defendant upon several specific grounds. The court sustained the objection and entered judgment for defendant, from which judgment plaintiff has appealed.

We agree with appellant that an agreement to indemnify a surety on a bail bond is not against public policy, but we are not in accord with his claim that public policy sanctions that clause in the contract of indemnity which permits the employment by the surety of an attorney to represent the defendant in substitution of his own attorney and to appear in the defendant's absence and enter a plea of guilty without the knowledge of the defendant, and which authorizes the attorney so employed by the surety to plead the defendant guilty to any other offense which carries as a sentence less or the same penalty as that prescribed for the offense with which he is charged. Such a contract

permits the surety to dicker, deal, and traffic with the court in order to minimize the loss which the bondsman or surety might suffer. According to the allegations of the complaint, Simon, the defendant in the criminal action, had absconded, and therefore ceased to be in the actual or constructive custody of the court. As was said in *People* v. *Redinger*, 55 Cal. 290 [36 Am. Rep. 32], in which case the court dismissed an appeal because the defendant was a fugitive, "it would be a farce to proceed in a criminal cause, unless the court had control over the person charged, so that its judgment might be made effective. It is true that an indictment may be found against one not in custody, but steps are directed to be taken in such case to secure his person (Pen. Code, secs. 945, 979, 984). And unless an arrest is effected the case can proceed no further. The defendant is arraigned in person, and pleads in person (sec. 977, Pen. Code) unless in case of misdemeanor (Id.). Every plea must be oral (Pen. Code, sec. 1017). By section 1253 of the Penal Code it is provided as to criminal causes that 'the judgment may be affirmed if the appellant fail to appear, but can be reversed only after argument, though the respondent fail to appear'; and by section 1255 that 'the defendant need not personally appear in the Appellate Court.' It may be urged that inasmuch as the defendant need not personally appear in the Appellate Court (sec. 1255, Pen. Code, *ut supra*) he has a right to appear by counsel, whether he is in custody or not. For the reasons here given, sustained by the cases cited, we think the defendant has no longer a right to appear by counsel, when he has escaped from custody, until he has returned to custody. By breaking jail and escaping, he had waived his right to have counsel appear for him (*Commonwealth* v. *Andrews*, 97 Mass. 543, *ut supra*). In fact, his right to constitute counsel and invest him with authority no longer exists while his absence from custody continues." In *Smith* v. *United States*, 94 U. S. 97 [24 L. Ed. 32, see, also, Rose's U. S. Notes], the court says: "In this case it is admitted that the plaintiff in error has escaped, and is not within the control of the court below, either actually, by being in custody, or constructively, by being out on bail. If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will

appear or not, as he may consider most for his interest. Under such circumstances we are not inclined to hear and decide what may be a moot case." There is not any difference in principle between a defendant appearing by counsel in an appellate court in his absence and a defendant appearing by counsel in a justice's court in his absence, both being permitted by the Penal Code; nor is there any distinction between the right of a defendant who has escaped and is no longer in actual custody to appear by counsel and a defendant who has "jumped his bail" and is no longer in constructive custody. It, therefore, follows that the defendant in the criminal case here, having placed himself without the constructive custody of the court, had no authority to appear either by his own counsel or by counsel substituted for him—at least not until he had surrendered to the actual or constructive custody of the court.

We agree with appellant that where the consideration for a contract is valid and such contract has several distinct objects of which some are lawful and others unlawful, the contract is valid as to the lawful objects (Civ. Code, sec. 1599; *Hedges* v. *Frink*, 174 Cal. 552 [163 Pac. 884]; *Mack* v. *Jastro*, 126 Cal. 130 [58 Pac. 372]; *McCahan* v. *McCahan*, 47 Cal. App. 176 [190 Pac. 460]). Here, however, there is no provision in the contract authorizing plaintiff to institute search for Simon or agreeing to reimburse him for money so expended. "It is elementary that a guarantor cannot be liable beyond the express terms of the contract of guaranty (*San Francisco Theological Seminary* v. *Monterey Gas & Elec. Co.*, 179 Cal. 166 [175 Pac. 693]). A surety has all the rights of a guarantor (Civ. Code, sec. 2844) and cannot be held beyond the express terms of his contract" (*Murphy* v. *Hellman Commercial etc. Bank*, 43 Cal. App. 579, 587 [185 Pac. 489]). "There is no escape from the principle declared in the sections of the Civil Code above cited (secs. 2819, 2840, 2844) that sureties have the right to stand upon the very terms of their contract" (*Michelin Tire Co.* v. *Bentel*, 184 Cal. 321 [193 Pac. 773]). There being no express provision in the contract under which defendant agreed to indemnify plaintiff for the expense incurred for services of detectives, traveling expenses and long distance telephone tolls, such payments, if so made by plaintiff, were purely voluntary and cannot be recovered.

As to the item of $135 alleged to be due and owing on account of premiums and service fees and which are alleged to have been paid by plaintiff, it may be said that we are unable to determine from the record whether any amount is unpaid or when the bonds were declared forfeited. The application for the bond was made on June 24, 1926, and on June 28, 1926, Simon was arraigned and released from custody, the defendant having paid the first annual premium and first semi-annual service fee, which latter sum he agreed to continue to pay every six months and the premium annually until the company and Tischhauser should be discharged from liability—that is, during the life of the bond. Then follows an allegation that the time for trial on one charge and the preliminary examination on the other were regularly fixed by the court, but Simon failed to appear and the bonds were declared forfeited. Of course after the bonds were forfeited there was no further obligation on defendant to pay the annual premiums or the semi-annual service fees. It is unlikely that the misdemeanor trial and the preliminary examination were set by the justice of the peace later than six months following the arraignment, at which time the bonds were declared forfeited, and if not, no further sum as premium or service fee is due and owing according to the contract. In the absence of any allegation in the complaint or anything in the record showing additional sums due as annual premiums or semi-annual service fees, it will be presumed that no such additional payments are due or owing as "every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of the superior court." (2 Cal. Jur. 852; *Finkelstein* v. *Cosgrove*, 83 Cal. App. 203 [256 Pac. 609].)

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 15, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1929.

Preston, J., dissented.