STATE OF IOWA, appellee, v. ELUN GIRDLER, JR., appellant.

No. 49919.

(Reported in 102 N.W.2d 872)

MAY 3, 1960.

REHEARING DENIED AUGUST 2, 1960.

Carroll E. Cutting, of Decorah, for appellant.

Norman A. Erbe, Attorney General, Marion R. Neely, Assistant Attorney General, and Robert N. Johnson, Lee County Attorney, for appellee.

THOMPSON, J.—The defendant appeals from a conviction of assault with intent to commit a felony and being a habitual criminal and judgment and sentence thereon. The record as filed herein is confusing and difficult to follow. No index of the

evidence is attached; many dates are not given; and many of the signatures to the information and amendments thereto are not shown. Some of these defects are supplied by an amendment to the record filed by the State, and others by the transcript of the record. We think the statement of the important and material facts as set out hereinafter fairly shows the situation as garnered from all the records and purported records before us.

On June 3, 1959, the defendant was an inmate of the Iowa State Penitentiary at Fort Madison. On that date he, with three other inmates—Janes, Woodson and Boerger—took part in a prison break and escape. This was accomplished by tying up two guards and holding them at knife point while the escapees sawed bars and got away. The affair seems to have been distinctly a "non-profit" transaction so far as the present defendant is concerned; since he, with the others, was apprehended a few days later and returned to the prison. The Lee County authorities, perhaps understandably irritated by this course of conduct, took further action. In colloquial parlance they "threw the book" at the defendant, and with what to date at least seems a quite accurate aim. The colloquialism, as applied to the defendant's situation, means no more than that he was charged with the various crimes of which there was substantial evidence he was guilty. Three true informations were filed against him: one, with which we are dealing here, charging first, assault with intent to commit a felony, to wit, escape; later and before trial amended to charge the same assault and being a habitual criminal; the second, charging separately the crime of escape; and the third, larceny of a motor vehicle. Convictions being had in all three cases, separate appeals were taken to this court. The net result to the defendant is that not to exceed forty years in indeterminate sentences have now been added to the remainder of the term which he was serving when he escaped. We shall deal in this opinion with the charge of assault with intent to escape and being a habitual criminal.

I. As with the record, so with defendant's grounds of complaint. His errors assigned, brief points and argument do not follow the same pattern of grievance. However, we have studied them carefully and have in addition given the defendant

the benefit of Code section 793.18, as we are required to do. This says we must examine the record without regard to technical errors or defects and render such judgment as the law demands. We interpret this to mean that we are charged with the duty of seeing that the defendant had a fair trial in all respects. This we have done, and we find that his rights were fully protected throughout.

Defendant's complaints may be summarized as these: The amended information charging assault with intent and being a habitual criminal was bad for duplicity, in that it charges two separate offenses; an information may not be amended as to matters of substance; the amended information was not approved and signed by the court; no notice of the proposed amendment was given to the defendant; the original amendment was defective because it did not have attached the names of proposed witnesses and minutes of their testimony; and the evidence was not sufficient to generate a jury question on the primary question of assault with intent to commit a felony. We shall discuss these in order.

II. The question of duplicity is discussed at some length and many authorities cited in State v. Eichler, 248 Iowa 1267, 1270 through 1274, 83 N.W.2d 576, 578 through 580. The case decides the point adversely to the defendant's contention here, and we shall not further elaborate it.

III. So with the claim that a true information filed by the county attorney may not be amended as to matters of substance. Here the defendant cites case authorities and statutes dealing with indictments. But an information stands upon a different footing. It is not the action of a grand jury, but of the county attorney; and we perceive no reason why, if he may file the information in the first instance, he may not, with the permission of the court, amend it either as to matters of substance or of form. The question is decided against defendant's contention in State v. Hartung, 239 Iowa 414, 421, 422, 423, 30 N.W.2d 491, 494, 495, 496, with other authorities there cited.

IV. Two ready answers appear to the argument that the amended information was void because it was not approved and signed by the trial court. First, the question was not raised

by a motion to set aside the information as required by Code section 769.16, paragraph 5. A demurrer was filed, but it does not raise the point, nor was it the proper procedure in any event. Section 769.17 requires that a motion to set aside an information must be made before a plea is entered by the accused, and if not so made "shall be deemed waived." And, although the defendant contends otherwise, the transcript of the record shows that upon the overruling of the demurrer he entered a plea of not guilty. The abstract of the record also shows this, at the commencement of the trial: "The Court: 'Mr. Girdler, your attorney has entered a plea of not guilty. Is that your plea also?' The Defendant: 'Yes.'"

Another reason for holding the contention to be groundless is that the record abundantly shows the court did approve the amendment. It entered its order permitting it to be filed, tried the case upon the amended information and instructed upon it. State v. Sommer, 249 Iowa 160, 173, 174, 175, 86 N.W.2d 115, 123, 124, deals with a very similar argument and holds there was no error.

■ V. The question of lack of notice of the filing of the amendment involves, as the trial court pointed out, a misstatement of the record. When the defendant was first arraigned, on June 22, 1959, he was without funds to procure counsel, and Joseph Phelan, a competent and experienced attorney of Fort Madison, was appointed to represent him. Mr. Phelan continued in this capacity until September 9, when he was discharged by the defendant by a letter which stated his services were no longer needed, since the accused was employing an attorney. In the meantime, however, the proposed amendment had been filed on August 31, and on September 1 Mr. Phelan, as the defendant's attorney, in writing, waived notice of hearing on the amendment and acknowledged receipt of a copy.

■ VI. As to the alleged error based on the failure of the original information to contain minutes of the testimony of the proposed witnesses for the State, it is only necessary to say that the question was not properly raised in the trial court. Section 769.16, supra, at paragraphs 2 and 3 provides that a motion to set aside the information may be made when the

minutes of evidence have not been attached to the information, or when the names of the witnesses are not indorsed. Section 769.17, supra, as we have already pointed out, says the objections which may be made by motion as defined and specified in section 769.16 shall be deemed waived if not made before plea. No such motion was ever made in this case. An attempt was made to raise the question by demurrer; but this was not a proper ground for demurrer, and in addition, at the time the demurrer was filed the minutes of testimony and names of witnesses had been shown, attached to the amendment to the information, for some twenty days.

VII. The escape was contrived, according to the State's testimony, by means of the four convicts—Janes, Woodson, Boerger, and Girdler—or some of them, seizing two guards, Larry Pickard and Lawrence W. Smith, and holding them at knife point while they sawed the bars and escaped. The evidence for the State is that the knives were held at the throats of the guards while the preparations were made. Just who tied up the guards and who held the knives is not made clear; but there is substantial evidence Girdler was present and taking part in the preparations for the escape. Whether he actually used the ropes or the knives is not important; he was a participant in the plan of escape, was present while it was being carried out, and accepted its benefits, doubtful though they may now seem to have been. It is true there is evidence for the defendant that he was not present while the guards were being attacked and tied up or held at knife point; but this did no more than raise a question for the jury. On the question of the liability of a participant in a crime, or a confederate or an accomplice, who does not actually strike the blows or commit the assaults, see State v. Kneedy, 232 Iowa 21, 28, 29, 3 N.W.2d 611, 615; State v. Russell, 245 Iowa 1190, 1204, 66 N.W.2d 35, 43; and State v. Smith, 248 Iowa 603, 608, 609, 81 N.W.2d 657, 660.

VIII. Section 747.5, supra, defines a habitual criminal as "Whoever has been twice convicted of crime, sentenced, and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than three years

each shall, upon conviction of a felony committed in this state after the taking effect of this section, be deemed to be a habitual criminal, * * *." The amended information upon which the defendant was tried alleged two such previous convictions, sentences and commitments. The first was a conviction in the United States District Court for the Southern District of Illinois for breaking into a post office, with sentence and commitment to the Federal Reformatory at Chillicothe, Ohio, for a period of three years. To support this by way of proof, the State introduced in evidence an authenticated copy of the commitment, dated December 21, 1954; and the testimony of Gilbert Scheller, a deputy United States Marshal, who testified that by virtue of the sentence and commitment he took the defendant to the Reformatory at Chillicothe, the person so taken and committed by him being the same individual as the defendant presently on trial in the instant case.

The second conviction alleged was apparently the one under which the sentence was imposed which the defendant was serving at the time of the prison break. The amended information referred to it as a conviction for breaking and entering had in the District Court of Des Moines County, Iowa, on November 25, 1957, with sentence for a term of ten years. An authenticated copy of the record of this conviction was introduced in evidence and Charles E. Wilkins, record clerk at the penitentiary, testified that the defendant had prior to June 3, 1959, been held there by virtue of a mittimus from the District Court of Des Moines County, sentence having been pronounced there on November 25, 1957, the crime charged being breaking and entering and the term of sentence being not to exceed ten years. He identified the defendant in the instant case as the same person held under the Des Moines County conviction. There was also the testimony of Jack Bedding, a captain in the Burlington, Iowa, police department, who said he was present during the trial of the Des Moines County case and identified the defendant therein as the same person on trial in the case at bar. He was not present when the defendant was sentenced in Des Moines County.

The facts showing the identification of the present defendant with the person convicted in the two prior offenses charged are at least as strong as those we found sufficient to create a jury issue in State v. Post, 251 Iowa 345, 99 N.W.2d 314, with analysis of authorities and discussion on pages 349 to 352 inclusive of 251 Iowa, and on pages 317 to 319 inclusive of 99 N.W.2d. See also State v. Bolds, 244 Iowa 278, 284-287 inc., 55 N.W.2d 534, 537, 538.

IX. We have discussed the various contentions of the defendant at some length, because of the seriousness of the offense charged rather than from any finding of substantial merit in them. Some are founded upon misstatements of the record, and others clearly fly in the face of our decided precedents and statutory law. We have scanned the entire record carefully, without limiting our study to the errors claimed by the defendant, and find that he had a fair trial in every respect.— Affirmed.

All JUSTICES concur except BLISS and OLIVER, JJ., not sitting.