In re the MARRIAGE OF Glen R. MEYERS and Delores K. Meyers.

Upon the Petition of Glen R. MEYERS, Appellee,

and concerning Delores K. MEYERS, Appellant.

No. 2–56814.

Supreme Court of Iowa.

April 16, 1975.

James P. Hoffman, Keokuk, for appellant.

Norman & Younggren, Keokuk, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

Respondent-wife appeals property division, alimony and child support provisions in a marriage dissolution decree. Petitioner-

husband cross-appeals on the claim the decree should not have been entered for the reason the parties were never lawfully married. We modify, affirm and remand upon the wife's appeal and affirm upon the husband's cross-appeal.

Separate petitions for dissolution were filed by Glen R. Meyers (Glen) and Delores K. Meyers (Delores). Glen moved to dismiss Delores' petition because his petition was already on file. The two cases were consolidated for trial and the decree resulted. Neither party ever withdrew allegations contained in their respective petitions. Both petitions alleged the parties were married in Keokuk, Iowa, in September, 1960.

I. Because the claim asserted in Glen's cross-appeal would be dispositive if accepted, we consider it first. Notwithstanding his allegation of such marriage Glen claimed at trial and claims on appeal their marriage was invalid by reason of a prior undissolved marriage of Delores.

We learn of Delores' prior marriages from her own testimony on cross-examination. Under questioning by Glen's counsel she related her first three marriages ended in divorce. A fourth ended with the death of that husband. Her cross-examination also disclosed she later entered a ceremonial marriage in Reno, Nevada, with Lawrence Noah. Glen's counsel further elicited on cross-examination the fact Mr. Noah had not, prior to September, 1960, secured annulment or dissolution of this ceremonial marriage. Delores also explained why she nevertheless felt free to marry Glen. The transcript of Delores' cross-examination includes the following:

"Q. And you went and had the marriage solemnized in Reno, Nevada somewhere about September 21st, 1955? A. Yes, but it wasn't legal because he had been married before and his divorce decree wasn't final.

"Q. His divorce decree wasn't final? But, did you ever have that marriage set aside? A. As far as I know, they didn't have to because the attorney said that the marriage was not recognized in California because his divorce was not legal.

"Q. When did his divorce become final if you know? A. It was a year. It was supposed to have been a year, you know, and they had an interlocutory decree.

"Q. You don't have those dates and facts? A. No, I don't."

Later cross-examination includes the following:

"Q. Now, then, was that marriage ever dissolved by any formal Court action or was there a divorce or annulment to that marriage? A. It was never really a marriage.

"Q. Oh, I just want an answer to my question. Was that marriage ever dissolved or was there a formal divorce or was that an annulment? A. Not to my knowledge, no."

██ Although Glen's counsel moved to dismiss "this whole action" he never moved to strike the quoted testimony as hearsay. Under the "plain error" rule the reception of this evidence without objection rendered it a part of the evidence in the case, usable as proof to the extent of its rational persuasive power. State v. Schurman, 205 N.W.2d 732, 735 (Iowa 1973); State v. Johnson, 223 N.W.2d 226, 228 (Iowa 1974); McCormick on Evidence, Second Ed., § 54, pages 125–126.

Proof of a valid marriage between Delores and Glen is strengthened by two additional evidential rules. First as a general rule:

" * * * Averments in a pleading * * not withdrawn or superseded are conclusive admissions of the facts pleaded. In Shipley v. Reasoner, 87 Iowa 555, 557, 558, 54 N.W. 470, 471, we said: 'As to such admissions, there is no issue; no proof is required; and the party making them is bound thereby * * *.' * * *." Grantham v. Pot-thoff-Rosene Co., 257 Iowa 224, 230, 131 N.W.2d 256, 259. This rule was quoted with approval in Hanson v. Lassek, 261 Iowa 707, 709, 154 N.W.2d 871. See also 61 Am.Jur.2d, Pleadings, § 177, page 604; 29

Am.Jur.2d, Evidence, § 687, pages 740–742; 71 C.J.S. Pleadings § 59, pages 147–154; 31A C.J.S. Evidence § 302, pages 775–777.

This general rule is affected by the requirements of §§ 598.7 and 598.8, The Code. These sections require a hearing and proof of the allegations in a petition for dissolution. One such statutorily prescribed allegation is the place and date of marriage of the parties.

In Craft v. Craft, 226 N.W.2d 6 (Iowa 1975) we held the provisions of §§ 598.7 and 598.8 were mandatory and cannot be obviated by stipulation. We further held however a stipulation of the parties is corroborative evidence and may be considered in connection with petitioner's showing. Similarly, the existence of the marriage between Glen and Delores was corroborated by the pleadings of both parties in this case.

Delores' claim that her marriage with Glen was valid is further bolstered by a presumption we have previously recognized:

"In case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage, and the party attacking the second marriage has the burden of proving its invalidity and of showing a valid prior marriage; and where a valid prior marriage is shown it is presumed to have been dissolved by divorce or death so that the attacking party has the burden of adducing evidence to the contrary." 55 C.J.S. Marriage § 43c(3), page 893. We quoted this authority with approval in In re Estate of Weems, 258 Iowa 711, 715, 139 N.W.2d 922, 924 (1966).

Glen argues this presumption operates in favor of Delores' marriage to Mr. Noah. It might have so operated if that marriage were the one disputed here and had not been followed by the later marriage challenged in this litigation. We believe the presumption favoring the later marriage strengthens Delores' claim she was free to marry Glen.

Taken together, the pleadings in this case, Delores' testimony concerning the in- validity of Mr. Noah's prior divorce, and the presumption favoring a second marriage establish the marriage between Delores and Glen. We agree with the trial court in so finding. Glen also claims in his cross-appeal the alimony, child support and property settlement provisions of the decree were excessive. As will be seen in the following division, we find this claim also to be without merit.

II. Delores appeals the property division, alimony and child support provisions of the decree. The parties have a son, Glen Austin Meyers, born November 19, 1962. The award of Glen Austin's custody to Delores is not disputed.

When the marriage was entered Glen owned the house in which the parties were to live. He also owned Meyers Sanitary Service which was operated out of his home. The business had been started by Glen a few years previously. A high school graduate, Delores was 47 at the time of trial. During the marriage she handled the bookkeeping, answered the phone and did general office work. She drew no salary; all money generated by the business went in the parties' personal savings and checking accounts.

Delores once worked in a factory but could not do so now because of health problems. She now has one third of her stomach removed and suffers from a hiatus hernia and ulcers. In addition she needs medication for a thyroid problem.

Glen was 55 at the time of trial and also complained of health problems which he believed would curtail physical activity in the future.

While the parties were married the business prospered and grew. Glen's income tax return showed he earned about $22,000 during 1972. He testified it would be less in the future.

As of May 3, 1972 the parties owned a savings account of $14,651.16 and had $12,- 541.06 in their checking account. After separation Delores purchased a home for

$4000 with a down payment of only $350. A balance of $3500 was due for this home at the time of trial. Glen owned the house the parties occupied during the marriage. During that period improvements costing about $2000 were made on the dwelling. At the time of trial it was worth $7000 to $9000.

The parties also owned a 1967 Mercury, a 1973 pickup truck, and various household goods and appliances. There is no accurate way of fixing the value of the business. Delores testified, but Glen denied, a prospective purchaser had offered $150,000 for the business. The 1973 tax return showed about $80,000 of depreciable business property.

The trial court awarded Delores the equity in the house she purchased, the 1967 Mercury, her personal effects, household goods in her possession, and lump sum alimony in the amount of $7500. Glen was ordered to pay $35 weekly child support during Glen Austin's minority. He was ordered to pay $350 toward Delores' attorney's fees and was awarded all other property.

Under the criteria listed in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968) and In re Marriage of Williams, 199 N.W.2d 339 (Iowa 1972) we believe the awards were inadequate.

Upon consideration of the *Schantz-Williams* criteria we believe Delores should be awarded the house she purchased, the Mercury automobile, her personal effects and household goods in her possession. We believe an equitable property division also calls for the payment to her of the cash sum of $13,500. Delores should receive alimony in the amount of $200 per month until she remarries or until either party dies. Glen should also be required to pay $200 monthly child support during the minority of Glen Austin. In addition Glen should contribute $1000 toward Delores' attorney's fees for services in connection with the trial and appeal of this case.

The case is remanded with instructions to modify the trial court's decree accordingly. Costs on appeal are taxed to Glen.

Modified, affirmed and remanded on respondent-wife's appeal. Affirmed on petitioner-husband's cross-appeal.