STATE of Iowa, Appellant,

v.

Doug BRANDT, Appellee.

Nos. 59122–59124.

Supreme Court of Iowa.

April 20, 1977.

Richard C. Turner, Atty. Gen., William F. Raisch, Asst. Atty. Gen., for appellant.

Francis Fitzgibbons and Harold W. White, Fitzgibbons Brothers, Estherville, for appellee.

REYNOLDSON, Justice.

The magistrate sustained a motion to dismiss three related indictable misdemeanor charges on the ground the State had violated § 795.2, The Code, by not providing a speedy trial. The court also sustained a motion to "dismiss or quash" the informations on the ground a special assistant county attorney was appointed without strict compliance with § 336.3, The Code. We reverse and remand for trial.

Defendant, a purchasing agent for Estherville, was alleged to have purchased supplies from Mid Continent Laboratories, in return for which that company shipped to defendant's wife a General Electric dishwasher, a General Electric electric range and a General Electric trash compactor.

The county attorney asserted a conflict of interest because he represented defendant and members of his immediate family in certain civil matters. The district court

appointed William F. Raisch, an assistant attorney general, as special assistant county attorney. The latter filed three county attorney informations, each based on acceptance of one of the above-alleged gifts on a different date, and each asserting a violation of § 741.1, The Code, 1973 (accepting gifts, bonuses or gratuities).

April 28, 1975, these informations were filed with the clerk of court. For an undisclosed reason the clerk did not comply with § 769.14 which required her, upon the filing of the informations, to issue arrest warrants for the accused. There is no inference her violation of this statute was in any way attributable to the prosecution or the special assistant county attorney.

Nor is there any question but that defendant and his counsel Mr. Francis Fitzgibbons were aware of this situation. Defendant's brief submitted to the magistrate stated, "In the present case, the Defendant and his attorneys were awaiting the next move of the State following the filing of the informations against him."

The record discloses after filing the informations Mr. Raisch returned to his duties with the attorney general's office in Des Moines. He assumed, to his subsequent dismay, defendant's arrest and arraignment would be handled by the local authorities. He conceded on oral argument this Emmet county prosecution was his first major assignment following his law school graduation.

Upon checking several weeks later to see how matters were progressing, Mr. Raisch discovered defendant had not been arrested or arraigned, nor had the arrest warrants been issued. He proceeded to Estherville on June 19, 1975. He requested Mr. Fitzgibbons to attend an arraignment that afternoon. This request was refused. Mr. Raisch then caused the warrants to be issued and placed in the hands of the sheriff.

There was uncontradicted evidence by affidavits which clearly indicated defendant promptly made himself scarce. When the deputy sheriff on June 19 went to the city garage to arrest defendant he was told defendant was in Omaha and would return the next day. The next day, Friday, June 20, he was told defendant had not returned from Omaha. Monday, June 23, he was informed defendant was on vacation. Neither defendant's wife, his son, his counsel nor his employer knew his whereabouts. A diligent search failed to produce defendant. Defendant's wife thought he might be in Las Vegas.

On June 24, 1975, the sheriff issued a nationwide item for the arrest of Harry Francis Brandt, also known as Doug Brandt. He called security guards in Las Vegas who knew defendant, without success. The Iowa Bureau of Criminal Investigation was brought in to no avail. Not until June 30, 1975, three days after the § 795.2 speedy trial time had expired, was defendant's arrest effected.

Meanwhile, an order was filed June 24, 1975 for defendant's arraignment on June 26, 1975. However, defendant had not been apprehended. Mr. Fitzgibbons, who had never appeared personally or by written appearance for defendant, did not receive a copy of this order. A subsequent order continued the proceedings until July 10, 1975.

July 8, 1975, Mr. Fitzgibbons first appeared for defendant by filing a motion to dismiss, alleging a violation of his speedy trial right under § 795.2, The Code. July 25, 1975, defendant filed a motion to "dismiss or quash" the informations based upon the alleged invalid appointment of a special assistant county attorney. A hearing was held July 28, 1975. The magistrate sustained both motions.

## MOTIONS TO DISMISS FOR FAILURE TO PROVIDE SPEEDY TRIAL

 I. There is no dispute defendant was not brought to trial within the § 795.2 60-day period, or that the burden is on the State to show good cause for delay. *State v. Hines*, 225 N.W.2d 156, 158 (Iowa 1975). It might be argued the inexplicable malfunction in the clerk's office which resulted in the warrants not issuing constitutes good cause. *State v. LaPlant*, 244 N.W.2d 240,

242 (Iowa 1976) ("But good cause may be shown by the State without establishing fault on the part of defendant or his counsel").

■ But it is sufficient here to examine the period following issuance of the warrants. If acts or omissions of the defendant or his counsel contributed to the delay, *McCandless v. District Court of Polk County,* 245 Iowa 599, 606–607, 61 N.W.2d 674, 678 (1953), or if it is otherwise attributable to defendant, *State v. Lyles,* 225 N.W.2d 124, 126 (Iowa 1975), defendant's motion to dismiss should not have been sustained on § 795.2 grounds.

II. The gist of the magistrate's ground for sustaining the speedy trial dismissal motion is contained in the following language found in the ruling:

"Section 775.2 of the Code allows the defendant to appear at his arraignment by an attorney. Section 777.19 of the code provides that a defendant may be tried in his absence, again, if he appears by an attorney. The Court concludes that the absence of the Defendant as set forth in the Affidavits of the State and the inability of law enforcement officers to locate him does not preclude his arraignment and trial since the State's prosecuting attorney was aware that the Defendant had an attorney in Estherville available to appear on his behalf during the period from April 28, 1975, to June 27, 1975.

\* \* \* \* \* \*

The Defendant's absence, however, in these misdemeanor proceedings does not have the result of prohibiting the arraignment or trial of the Defendant from being held when the State knows the identity of the Defendant's attorney. If Mr. Fitzgibbons had been notified of the June 24 Order, the burden would have been upon him to either appear for the Defendant or request additional time. He was not, however, so notified."

This ruling proceeds from a factual inference for which there is no support in the evidence. In other respects it misapplies the law.

■ III. First approaching the factual issue, it should be noted at the outset our review of trial court's determination is not *de novo. State v. LaPlant,* 244 N.W.2d 240, 242 (Iowa 1976); see *State v. Albertsen,* 228 N.W.2d 94 (Iowa 1975). Where the determination of the trial court is supported by substantial evidence in the record, we must affirm. *State v. Reynolds,* 250 N.W.2d 434, 437 (Iowa 1977).

Here trial court found defense counsel was "available to appear for defendant at any scheduled proceedings." This finding is supported in the sense Mr. Fitzgibbons was physically present in the community and representing the interests of the defendant. But implicit in this finding is the concept Mr. Fitzgibbons was *willing* to appear in court for his client prior to his apprehension. There is no substantial evidence in this record to support that inference. The only evidence available is diametrically opposed.

The sole evidence offered by defendant on submission of the motion was defense counsel's affidavit. It asserts counsel had continuously been attorneys for defendant "in these criminal matters"; Mr. Raisch "was told by me that I and the law firm \* \* \* *would be representing"* defendant; and in conversations with Raisch or Magistrate Arnold *no statements* were made that counsel or his firm *"would not be representing"* defendant. (Emphasis supplied).

Mr. Raisch, the assistant county attorney, on the witness stand being examined by Mr. Fitzgibbons, testified the magistrate had informed him by telephone "That the basis of his conversations with you [defense counsel] was that you would not represent—you did not represent, formally represent Mr. Brandt until he had been formally arraigned—or arrested."

The magistrate's recollection of his conversation with defense counsel, dictated into the record, is illuminating. Having been advised by Mr. Raisch that Mr. Fitzgibbons was defendant's lawyer, the magistrate placed a call to the latter on November 22, 1975, apparently to discuss the fu-

ture proceedings. He recollected "Mr. Fitzgibbons advised me that Mr. Brandt had been in to see him about the matter some time ago, I gathered in May or something of that sort, and that at that point no retainer had been paid. He further advised me Mr. Brandt had not been arrested or had not been ordered in for arraignment." In a later telephone conversation with Raisch "I recited briefly the substance of my telephone call to Mr. Fitzgibbons." There is no intimation in the magistrate's colloquy that defense counsel *was then* purporting to represent defendant or that he had any authority or inclination to proceed with arraignment or trial or appear for defendant *prior to* defendant's arrest.

Neither the testimony of Mr. Raisch in this regard, nor the recollection of the magistrate, was ever controverted by defendant.

The record demonstrates beyond dispute counsel did not intend to appear for defendant at arraignment or trial until defendant was apprehended. Mr. Raisch contended Mr. Fitzgibbons told him on April 28, 1975 there would be no trouble in bringing his client in for arraignment. On this point when Mr. Raisch was examined under oath the following exchange occurred:

"A. * * * [Y]ou shook my hand, introduced yourself and said you did represent Mr. Brant [sic] and said there would be no trouble bringing him in for arraignment.

Q. [By Mr. Fitzgibbons] Mr. Raisch, I will go on record under oath or any way and say that I don't remember that conversation. A. If you are going to make that statement, I wish you would go under oath.

Q. I will be under oath, and I don't remember making that statement. I don't even remember being—A. Are you under oath?

Q. At the appropriate time I will be, but in the meantime I am cross-examining you."

The only evidence offered by defendant was his counsel's affidavit above summarized, which did not touch on this incident.

At a later point in his testimony Mr. Raisch was describing a visit with Mr. Fitzgibbons in the latter's office on November 19, 1975.

"Q. Would you relate to the Court, the best you can remember, that conversation, Mr. Raisch, as completely and clearly as you can? A. Yes, I will. I began by stating that there has been no warrants issued for the arrest of Doug Brandt, that no arraignment had been had at that time, that I was there to ask the cooperation of you and your office.

Q. What do you mean by 'cooperation'? A. That you would voluntarily bring your client in for arraignment, that I had arranged for a judicial magistrate to be present for an arraignment.

Q. When? A. That afternoon, if it was okay with you, and that I would call and confirm the time.

Q. What else did you say? A. Well, you accused me of ordering you into court, in for arraignment, which I denied numerous times to you.

Q. Didn't I ask you, 'are you ordering me?' Wasn't that the way the question was phrased? A. No. Exactly what you said: 'I am not going into court because the Attorney General orders me into court. I have lots of friends in Des Moines.'

Q. Oh? A. That's exactly what you said. I said, 'I am not ordering you into court, I am asking for your cooperation and I would like to have you bring your client in voluntarily.

Q. What else did you say? A. Then you said basically there was no way you would do it that day. I said, 'what about tomorrow?' You said, 'well, we will have to talk about that tomorrow' and I said, 'then you leave me no alternative, then, I will have to have warrants issued for Mr. Brandt's arrest and have him arrested,' and I said as I left, 'I am glad we have reached an understanding.'

* * * * * *

Q. And I am sure you got the impression that it might be difficult to get a

jury in that following week, it was too late to work in the regular court schedule? A. I didn't through you, but I had no reason—it didn't leave an impression with me. The impression that was left with me, was that you believed such. I had no doubt in my mind that we could get a trial set.

Q. In other words, you weren't impressed by what I said? A. No, I was not.

Q. Next time I will make it stronger.
* * *"

■ It is overwhelmingly apparent in the record Mr. Fitzgibbons was representing this defendant, as the magistrate found. He was representing him very well (although not in court) and he never entered a court appearance in these cases until after the 60-day period had expired. In view of the short interval prior to the § 795.2 deadline, he was understandably doing everything possible to avoid a court appearance. Absent an arrest, surrender, or a written appearance by counsel, it is also obvious trial court had no actual or constructive jurisdiction over the defendant. See *State v. Kostura,* 98 Ariz. 186, 188–189, 403 P.2d 283, 285 (1965); *Tischhauser v. Jarvis,* 95 Cal.App. 524, 273 P. 66 (1929).

■ Mr. Raisch, under oath, testified the clerk of court told him that on June 19, 1975 (the date the arrest warrants were ultimately issued) defense counsel called her and told her not to issue the warrants and that he was not representing the defendant. While this was "first hand" hearsay, there was no objection and no motion to strike. It could be considered as evidence. *State v. Harmon,* 238 N.W.2d 139, 146 (Iowa 1976); *In re Marriage of Meyers,* 228 N.W.2d 64, 65 (Iowa 1975).

The only conclusion which can be reached on this record is that Mr. Fitzgibbons, although looking after defendant's interests, did not intend to voluntarily represent him in a court appearance in his absence.

■ It may be argued that Mr. Raisch, despite the "understanding" reached with Mr. Fitzgibbons on June 19, nevertheless should have provided Mr. Fitzgibbons with a copy of the June 24th order setting arraignment, as a matter of professional courtesy. It could also be argued with equal force that Mr. Fitzgibbons as a matter of professional courtesy might have voluntarily appeared at an arraignment on June 19 or June 20 pursuant to Mr. Raisch's suggestion. But we do not in this instance equate professional courtesy with a legal obligation, a point we touch on later; nor in these circumstances do we believe the State's right and obligation to arrest and prosecute one accused of a crime should be controlled by matters of professional courtesy between lawyers.

Nor should these diverting circumstances prevent this court from reviewing the magistrate's determination defendant had no part in the delay disclosed here. We said in *State v. Potts,* 240 N.W.2d 654, 657 (Iowa 1976), "The right to a dismissal for failure to provide trial should not turn on defense gamesmanship or success in whipsawing the prosecution." This rule should apply regardless of how much the assistant county attorney may have learned from the experience.

■ The simple fact remains defendant could have been arraigned and tried within the statutory period if he had not disappeared. Ordinarily the absence of defendant may constitute "good cause" for delay. *State v. Lyles,* 225 N.W.2d 124 (Iowa 1975); A.B.A. Standards Relating to Speedy Trial § 2.3(e) (Approved Draft, 1968). This applicable standard provides:

"2.3 Excluded periods.

The following periods should be excluded in computing the time for trial:

* * * * * *

(e) The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence."

See also *United States v. Cartano,* 420 F.2d 362 (1 Cir. 1970), cert. denied, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970); *People v. Cronin,* 9 Misc.2d 173, 169 N.Y.S.2d 831 (1957); 3 Wharton's Criminal Procedure § 402, at 145 (12th ed. 1975).

The question remains whether despite his absence defendant should be discharged on the ground he left behind a lawyer, albeit one who sought to impose roadblocks to arraignment and trial prior to expiration of the § 795.2 period.

■ The statement of the proposition invokes a negative answer. Existence of a counsel who has never entered a court appearance in defendant's case cannot justify the magistrate's ignoring defendant's absence as good cause for delay.

IV. This leads us to the first instance in which the magistrate proceeded on an erroneous concept of the law. The magistrate concluded that "If Mr. Fitzgibbons had been notified of the June 24 Order, the burden would have been upon him to either appear for the Defendant or request additional time."

We have already noted the court had not secured jurisdiction over the fugitive defendant. Arrest warrants were out for the defendant. He was the subject of an interstate search. His nonappearance at an arraignment set by an ex parte order could hardly have concerned him. Entry of default would have been a meaningless gesture, without regard to the court's lack of jurisdiction. Nor did defense counsel have any incentive to appear for him. The only potential in such a course of action would have been to risk the opportunity for a speedy trial dismissal under § 795.2, The Code.

■ Counsel had never entered an appearance of any kind. How defense counsel could be placed under any "burden" to do anything upon receiving notice of an ex parte order fixing an arraignment date is nowhere explained. Defendant has cited no authority to support this legal premise. We have found none. This theory furnishes no legal basis for trial court's ruling.

V. The second major law error came when the magistrate grounded his dismissal ruling on the theory defendant's presence was not required for the State to proceed with a misdemeanor prosecution.

Defendant seeks to avoid the rule of *Lyles,* 225 N.W.2d 124, where, in ruling defendant who eluded arraignment could not secure a speedy trial dismissal, we said, "The State's duty to provide a defendant a speedy trial does not require that it play a game of hide-and-go-seek with him." See *Boyle v. Critelli,* 230 N.W.2d 495 (Iowa 1975). Defendant argues because one accused of a misdemeanor may be permitted to appear by counsel upon arraignment, § 775.2, and at trial, § 777.19, the State could have prosecuted him in absentia and therefore he did not contribute to that delay.

In sustaining the motion to dismiss, the magistrate adopted the following legal argument made by defense counsel at the hearing,

"So I think the question then becomes for the court—if you will look at the brief we have filed—I think the court would have no right to even command Mr. Brandt to appear for an arraignment in a misdemeanor, if there are attorneys who are ready and willing and able to appear for him.

Now if the defendant being charged with a misdemeanor does not have to appear at his own arraignment and his own trial, then what kind of absence could the State show for good cause? He could not show the absence of the defendant himself."

Trial court's ruling is grounded on this legal rationale. It will not stand analytical scrutiny.

It should first be noted we are not concerned with a simple misdemeanor. The offense charged here is a white-collar crime which upon conviction could result in a year's imprisonment in the county jail. It is obvious such an imprisonment, imposed without defendant ever having been before the court, would pose grave constitutional

issues. See *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); cf. State v. Hendricks, 240 N.W.2d 640 (Iowa 1976); *State v. Welfort,* 238 N.W.2d 781 (Iowa 1976); 23 C.J.S. Criminal Law § 975, at 903 (1961) ("it has also been held that where the offense is punishable by imprisonment waiver [of right to be present at trial] must be by accused personally.").

It is equally obvious the State, with its burden of proof, should have the right to elect to require defendant's presence. The record discloses a discrepancy between defendant's true name and the name on the indictment. The matter of identification is important. "[T]he arraignment consists of calling the prisoner to the bar and identifying him, reading the indictment to him, or furnishing him with a copy of it and taking his plea. * * * Its object is to establish the identity of the accused." 22 C.J.S. Criminal Law § 406, at 1108–1109; § 775.8, The Code.

The State's burden of identification is equally important at trial. According to minutes of testimony attached to the information a salesman was ready to testify that in return for the purchase of chemicals and supplies by "Doug Brandt" (purchasing agent for Estherville), he ordered shipped to Mrs. Brandt the gifts referred to above. Without the presence of this defendant in the courtroom, how were those sales to be related to Doug Brandt or Harry Francis Brandt? The prosecution has the right to require a defendant to be present for purposes of identification by witnesses. See *State v. Super,* 281 Minn. 451, 458, 161 N.W.2d 832, 837 (1968); *People v. Winship,* 309 N.Y. 311, 313–314, 130 N.E.2d 634, 635 (1955); *State v. Vincent,* 222 N.C. 543, 545, 23 S.E.2d 832, 833 (1943).

The basic flaw in defendant's reasoning is his attempt to bootstrap statutes which at the most give a trial court discretion to determine whether to proceed in absence of the accused into a statutory *right* not to be present in court when charged with an indictable misdemeanor. Defendant cites no authorities to support his theory. There are many decisions interpreting such statutes as *not* granting defendant a right to be absent. Many are collected and discussed in *State v. Super,* 281 Minn. 451, 161 N.W.2d 832. See *United States v. Shelton,* 6 F.2d 897 (E.D.La.1925); *Souther v. Reid,* 101 F.Supp. 806 (E.D.Va.1951); *Warren v. State,* 19 Ark. 214, 217–218 (1857); *Barnett v. Russell,* 299 Ky. 242, 185 S.W.2d 261 (1945); Annot., 68 A.L.R.2d 638 (1959); 21 Am.Jur.2d Criminal Law § 273, at 308 ("But even where his [defendant's] right to be present can be waived, this does not amount to a right to be absent, since the prosecution has a right to require his presence for purposes of identification by its witnesses and of receiving punishment if found guilty."); 23 C.J.S. Criminal Law § 973, at 889 ("A statute conferring authority on the court to try a misdemeanor charge in the absence of accused merely accords a privilege to the court and does not give accused a right to be absent.").

In these circumstances, the prosecution had a right to insist upon defendant's appearance at arraignment and trial. It was not required to attempt to entice defendant's counsel into court.

It is clear the magistrate misinterpreted the purpose and intent of §§ 775.2 and 777.19. Those statutes in these circumstances provide defendant no *right* to be absent from arraignment and trial so as to impose on the prosecution the obligation to proceed with only his counsel (who had never appeared in the case) or face dismissal for failure to provide a § 795.2 speedy trial.

Here the lower court's ruling was generated out of a factual inference which was not only without required substantial support in the record but against the overwhelming weight of evidence adduced at hearing. The ruling rested on two legal concepts, one a contemporaneously-made rule relating to defense counsel's "burden" which has no support in reason or precedent, and the other involving a misapplication and a misinterpretation of two statutes.

We hold trial court abused its limited discretion in finding the State did not meet

its burden to show good cause for delay in this case. See *State v. Albertsen,* supra, 228 N.W.2d at 98.

## MOTIONS TO DISMISS OR QUASH INFORMATIONS

VI. The above holding requires us to consider trial court's action in sustaining the identical "Motion to Dismiss or Quash Informations" filed in each of the three criminal cases. This issue arose in the following manner.

William B. Ridout, Emmet County Attorney, signed an "Application for Order Appointing Special Assistant County Attorney". This application alleged the county attorney represented the potential defendant and members of his immediate family in certain civil matters, because of this representation a conflict of interest might exist in this prosecution, and requested the court to appoint William F. Raisch, assistant attorney general, to serve as special assistant county attorney without compensation pursuant to § 336.3, The Code. An order appointing Raisch to serve as special assistant Emmet County Attorney "for the purposes of filing informations, prosecuting and representing the county of Emmet and State of Iowa in the above captioned matter" was entered by District Judge Underwood on April 22, 1975. These instruments were on file April 28, 1975.

The ground of the motion to dismiss or quash which the magistrate adopted was that the district court had no power to make the appointment because the application did "not show that both the Emmet County Attorney and his assistant were under a 'disability' within the purview of that provision [§ 336.3, The Code]."

Section 336.3, The Code, relevantly provides:

"In case of absence, sickness, or disability of the county attorney and his deputies, the court before whom it is his duty to appear, and in which there may be business requiring his attention, may appoint an attorney to act as county attorney, by order to be entered upon the records of the court * * * and, while acting under said appointment, he shall have all the authority and be subject to all the responsibilities herein conferred upon county attorneys."

Through some means not based on offered proof in this record, the magistrate found "that at all times relevant to these proceedings, William J. Sanderson was a duly qualified and acting assistant county attorney for Emmet County." Through the same or another undisclosed source the magistrate determined Ridout's representation of defendant concerned matters unrelated to the prosecution.

■ Assuming the magistrate in these circumstances had the power to reverse Judge Underwood's order, see *State v. Richards,* 229 N.W.2d 229, 233 (Iowa 1975), he should do so on the basis of competent record evidence so his decision might in turn be reviewed.

We next examine the motion before the magistrate. A motion to dismiss an information is unknown to our criminal procedure. *State v. Ramos,* 260 Iowa 590, 597, 149 N.W.2d 862, 866 (1967). Where the grounds urged are such fatal infirmities as are ordinarily raised by a demurrer, such motions have been considered as such. *State v. Herkleman,* 251 N.W.2d 214, 215 (Iowa 1977); *State v. White,* 234 N.W.2d 146, 147 (Iowa 1975); *State v. Berenger,* 161 N.W.2d 798, 800 (Iowa 1968).

■ But here the essence of defendant's motion to dismiss or quash informations is that the informations were not signed by a county attorney, § 769.3, or a properly appointed assistant county attorney, § 769.15. Such an issue must be raised by a motion to set aside the information. Section 769.-17(1), The Code. In an analogous situation we held in *State v. Girdler,* 251 Iowa 1214, 1217–1218, 102 N.W.2d 872, 875 (1960):

"Two ready answers appear to the argument that the amended information was void because it was not approved and signed by the trial court. First, the question was not raised by a motion to set aside the information as required by Code

Section 769.16 [now § 769.17], paragraph 5, I.C.A. A demurrer was filed, but it does not raise the point, nor was it the proper procedure in any event."

Confronted by the proper motion under the proper statute, the magistrate could have set a time within which to correct any defect found. Section 769.18, The Code; see *State v. Girdler*, supra, 251 Iowa at 1217, 102 N.W.2d at 874–875 ("[W]e perceive no reason why, if he may file the information in the first instance, he may not, with the permission of the court, amend it either as to matters of substance or of form"); cf. *State v. Fisher*, 172 Iowa 462, 465–466, 154 N.W. 587, 589 (1915).

In any event, it is obvious Judge Underwood properly exercised his discretion in appointing a special assistant county attorney. The county attorney had pending legal matters involving defendant and members of his immediate family. They were his clients. He had a right to disqualify himself, and, assuming existence of an assistant appointed by him, § 341.1, The Code, that assistant could properly be considered under the same disability.

While we have held an interest in a civil action involving the same matter disqualifies, *State v. Kittelson*, 164 N.W.2d 157, 167 (Iowa 1969), this does not mean other relationships will not provide sufficient ground for appointment of a replacement. We have noted "Prosecuting attorneys ought always * * * be above suspicion." *State v. Orozco*, 202 N.W.2d 344, 346 (Iowa 1972). An attorney-client relationship is significant enough to serve as a challenge for cause in jury selection. Rule 187(f), Rules of Civil Procedure.

Here the county attorney was confronted with the prospect of prosecuting a client whom he was representing, or directing the assistant he appointed to prosecute the client. However well these cases were prosecuted, verdicts of not guilty may have been viewed in the community with suspicion, and a consequent disillusionment regarding the criminal justice system.

The county attorney was under the duty to "strive to avoid not only professional impropriety but also the appearance of impropriety." Iowa Code of Professional Responsibility for Lawyers, EC 9.6. He was surely cognizant of other provisions of that Code, including DR 5–105 relating to the refusal to accept employment if the interests of another client may impair professional judgment, and DR 5–105(D) which relates to the ethical ban against a partner or associate accepting such employment.

While these ethical considerations and disciplinary rules may not be directly on point, they are so relevant the county attorney, examining his own conscience and the considerations involved, was justified in making application for appointment of a special assistant county attorney.

Finally, appointment of a special assistant county attorney here, even if deemed not precisely within statutory requirements, was fully justified under the well-recognized inherent power of the court to take such action. The following cases recognize the inherent power of the court, independent of statute, to appoint a special assistant or prosecuting attorney when the regular prosecutor is disqualified. *State v. Olson*, 249 Iowa 536, 543–544, 86 N.W.2d 214, 219 (1957); *State v. Lilteich*, 195 Iowa 1353, 1355, 191 N.W. 76, 77 (1922); *State v. Tyler*, 122 Iowa 125, 127–130, 97 N.W. 983, 984–985 (1904).

The magistrate overlooked these applicable principles in holding Judge Underwood's order violated § 336.3 and was entered without authority.

We reverse and remand for further proceedings in conformance with this opinion.

REVERSED AND REMANDED.

All Justices concur except MASON, J., who dissents, joined by RAWLINGS and McCORMICK, JJ.

REES, J., takes no part.

MASON, Justice (dissenting).

The only issue which needs to be decided in the three cases involved in this appeal is whether the trial court was correct in sustaining defendant's motion to dismiss for lack of speedy trial.

In reversing the trial court on this issue the majority states its conclusion in this fashion: "We hold trial court abused its limited discretion in finding the State did not meet its burden to show good cause for delay in this case. See *State v. Albertsen*, 228 N.W.2d [94] at 98 [(Iowa 1975)]."

In Iowa when a defendant in a criminal case moves to dismiss an information or indictment filed against him for failure to provide a speedy trial, he may base such motion either on the state and federal constitutional provisions prescribing the right of a speedy trial, or he may rely on the provisions of section 795.2, The Code. Of course a defendant may assert both.

Since our opinion in *State v. Gorham*, 206 N.W.2d 908, filed April 25, 1973, wherein we discarded the demand-waiver doctrine, our cases have not been entirely clear whether this court has relied upon the constitutional guarantees or on the statute in reaching its determination of a defendant's claim of lack of a speedy trial.

When the motion to dismiss for want of speedy trial is grounded upon the constitutional guarantees provided in Amendments 6 and 14 of the federal constitution and Article I, Section 10 of the Iowa Constitution, the four-factor balancing test announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, is involved. *State v. Lee*, 222 N.W.2d 471, 474 (Iowa 1974); *Boyle v. Critelli*, 230 N.W.2d 495, 497 (Iowa 1975). In *Barker* the Court held that a balancing test should be applied to each case, with consideration given the following factors: (1) length of delay; (2) reason for delay; (3) the defendant's assertion of his right to speedy trial; (4) prejudice to him. *State v. Steadham*, 231 N.W.2d 29, 31 (Iowa 1975).

However, in the case presently before us defendant's motion to dismiss the information for failure to provide a speedy trial is based solely on the provisions of section 795.2. At no point in the motion did defendant assert his right to a dismissal was predicated on either the state or federal constitutional guarantees.

In pertinent part section 795.2 provides that, "If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

It goes further in implementing a defendant's speedy trial right than the state and federal constitutions, *State v. Albertsen*, 228 N.W.2d at 97, and has been construed to require trial within 60 days from the date an indictment or information is filed unless defendant waives his right or unless the state shows good cause for postponement. *State v. Leonard*, 240 N.W.2d 690, 691 (Iowa 1976).

The State does not assert defendant waived his right to a speedy trial.

The state, not the defendant, has the obligation to bring a defendant to trial under the provisions of this statute. *State v. Lyles*, 225 N.W.2d 124, 126 (Iowa 1975); *State v. Montgomery*, 232 N.W.2d 525, 527 (Iowa 1975). Consequently, when the state, as here, relies on "good cause" in resistance to a defendant's motion to dismiss for failure to provide a speedy trial the burden in hearings at the trial court level is on the state to show delay beyond the period stated in the statute comes within the "statutory good cause" exception. *State v. Boyd*, 224 N.W.2d 609, 611 (Iowa 1974); *State v. Albertsen*, 228 N.W.2d at 97. Good cause for delay is shown when the delay is attributable to defendant. *State v. Lyles*, 225 N.W.2d at 126; *State v. Montgomery*, 232 N.W.2d at 527; *State v. Truax*, 232 N.W.2d 861, 863 (Iowa 1975); *State v. LaPlant*, 244 N.W.2d 240, 242 (Iowa 1976). In this connection this court has said it is not necessary for defendant to show delay has been prejudicial to him when he relies on section 795.2. *State v. Sassman*, 226 N.W.2d 808, 809 (Iowa 1975).

In regard to the requirement of trial within 60 days specified in the statute this court has said:

"* * * Every limitation statute sets up an arbitrary date after which certain

actions cannot be brought or certain rights cannot be enforced. One cannot escape the effect of such statutes by showing they were violated only a little bit." *State v. Nelson*, 222 N.W.2d 445, 449 (Iowa 1974). See also *State v. Hines*, 225 N.W.2d 156, 159 (Iowa 1975) and *State v. Sassman*, 226 N.W.2d at 809.

In other words, whether the delay in bringing a defendant to trial within the statutory period is one day or six months, the only way in which the impact of the statute can be avoided when waiver is not involved is by a showing of good cause. This means the length of the delay is relevant only as bearing on the quantum of proof required of the state to come within the "statutory good cause" exception. Hence, the longer the delay the stronger must be good cause. See *State v. Goff*, 244 N.W.2d 579, 582 (Iowa 1976).

The trial court based its conclusion the State had failed to sustain its burden of showing good cause for delay on the principle that it is possible and permissible under Iowa criminal law for a defendant charged with an indictable misdemeanor to never personally appear in the court. The trial court relied in part on section 775.2, The Code, for its position. This section provides:

"A person charged with a felony, or in custody without an attorney, must be personally present for arraignment, but in other cases he may appear therefor by counsel."

Arraignment consists in reading the indictment or information to the defendant, and, unless previously done, delivering to him a copy thereof and the endorsements thereon, and informing him that, if the name by which he is indicted or informed against is not his true name, he must then declare what his true name is, or be proceeded against by the name in the indictment or information, and asking him what he answered to the charge. Section 775.8, The Code.

The relation between an arraignment and the trial stage is pointed out in *State v.*

*Lyles*, 225 N.W.2d at 126, where the court said:

"Arraignment is a prerequisite to trial, unless waived. § 775.1, The Code; * * * [citing authorities]. The State had a duty to proceed as required by statute. In doing so, it had a right to wait until arraignment to have a trial date set. Until arraignment the State did not know that defendant desired a trial and that he was ready for trial."

Thus, the problem is whether the trial court erred in relying on section 775.2 as a basis for its conclusion the State had failed to sustain its burden of showing good cause for delay. This involves the question whether a misdemeanant may appear at arraignment through counsel without being personally present.

It is my view that he may since section 775.2 clearly states defendant "may appear therefor by counsel."

It is not necessary to reach the problem presented by section 777.19 which deals with a defendant's presence during trial. Cases from other jurisdictions dealing with the problem of defendant's presence at trial do not touch the problem presented by section 775.2 and are of no help in resolving the problem arising at the arraignment stage. See *Barnett v. Russell*, 299 Ky. 242, 185 S.W.2d 261; *State v. Super*, 281 Minn. 451, 161 N.W.2d 832; *State v. Vincent*, 222 N.C. 543, 23 S.E.2d 832, 833; *People v. Winship*, 309 N.Y. 311, 130 N.E.2d 634, 635; *Souther v. Reid*, 101 F.Supp. 806, 807 (E.D. Va.1951).

This is not a factual situation where a defendant is claiming a denial of rights afforded him at the arraignment stage as a basis for dismissal. Therefore, we need not reach the question whether this record would support a finding defendant had waived those rights by his failure to be present at arraignment.

Our review of a ruling on motion to dismiss for delay in trial is not de novo. *State v. Lamar*, 224 N.W.2d 252, 254 (Iowa 1974); *State v. LaPlant*, 244 N.W.2d at 242.

This court has announced that the grant or denial of a motion to dismiss does not rest in the discretion of the trial court; it must be determined upon legal grounds and is subject to review by this court. See *Newton v. City of Grundy Center*, 246 Iowa 916, 919, 70 N.W.2d 162, 163–164; *Ambrose v. Harrison Mutual Insurance Association*, 206 N.W.2d 683, 684 (Iowa 1973); and *Symmonds v. Chicago, M., St. P. & P. R. Co.*, 242 N.W.2d 262, 264 (Iowa 1976).

Under this limited extent of review I doubt the propriety of basing a determination whether the State had sustained its burden of proof of establishing good cause for delay in defendant's trial upon the exercise of discretion by the trial court.

The State made no effort to fulfill its duty to bring this defendant to trial until 52 days after the informations were filed in district court. Because the State subsequently did not notify defendant's lawyer that arraignment was scheduled for the fifty-ninth day of the speedy-trial period, we will never know whether the arraignment would otherwise have proceeded on that date or whether trial could have commenced within the statutory period. However, we know the State did not consider defendant's presence at arraignment to be essential. We also know the State was unable in fact to accomplish in eight days at the end of the 60-day period what it should have used the entire period to do. In view of the State's obvious dereliction during almost all of the statutory period, I am unwilling to say the State established good cause as a matter of law for its failure to bring defendant to trial in 60 days.

I would affirm the trial court and not reach the other issues dealt with by the majority.

RAWLINGS and McCORMICK, JJ., join this dissent.